IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---

**CHRISTOPHER BOWLER,**

**HUDSON HIGH SCHOOL CONSERVATIVE CLUB,** an unincorporated association,

**JOSEPH T. BOWLER,** by and through his father and next friend, **STEVEN BOWLER**,

**KIMBERLY A. BOWLER,** by and through her father and next friend, **STEVEN BOWLER**,

    *Plaintiffs,*

v.

**JOHN STAPELFELD,** in his individual and official capacities as principal of Hudson High School,

**DAVID CHAMPIGNY,** in his individual and official capacities as assistant principal of Hudson High School, and

**DR. SHELDON BERMAN,** in his individual and official capacities as Superintendent of Hudson Public School District,

**THE TOWN of HUDSON, MASSACHUSETTS,**

**HUDSON HIGH SCHOOL,**

    *Defendants.*

Case No. **05 CV 11007 PBS**

---

## *First Amended* COMPLAINT

COME NOW the Plaintiffs, by and through counsel, Gregory A. Hession, participating attorney for The Rutherford Institute, and make their ***First Amended*** Complaint

1

as follows:

## JURISDICTION AND VENUE

1.1     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343, as it is an action seeking redress under the laws and statutes of the United States for deprivation of rights secured by the Constitution and laws of the United States.

1.2     This Court has jurisdiction over the Plaintiff's claims arising under the Constitution and laws of the Commonwealth of Massachusetts pursuant to 28 U.S.C. § 1367(a), as such claims are part of the same case or controversy as those giving rise to the claims over which this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

1.3     Venue properly lies in this Court under 28 U.S.C. § 1391(b), as the Defendants all reside within the Commonwealth of Massachusetts and a substantial part of the events giving rise to this action occurred within the Commonwealth of Massachusetts.

## PARTIES

2.1     The Plaintiff, Christopher Bowler, is a person over the age of 18 who is a resident of Hudson, Middlesex County, Massachusetts. The Plaintiff has recently graduated from Hudson High School, but was enrolled as a student there at all times relevant to this Complaint.

2.2     The Plaintiff, Joseph T. Bowler, age 16, is a resident of Hudson, Middlesex County, Massachusetts, and brings this complaint by and through his natural father, Steven B. Bowler, of Hudson, Massachusetts. The Plaintiff is currently enrolled as a student at Hudson High School, and was so enrolled at all times relevant to this Complaint, and is a member of the Hudson High School Conservative Club.

2.3     The Plaintiff, Kimberly A. Bowler, age 15, is a resident of Hudson, Middlesex County, Massachusetts, and brings this complaint by and through her natural father, Steven B. Bowler, of Hudson, Massachusetts . The Plaintiff is currently enrolled as a student at

Hudson High School, and was so enrolled at all times relevant to this Complaint, and is a member of the Hudson High School Conservative Club.

2.4     Defendant John Stapelfeld is currently and was at all times relevant to this Complaint the duly-appointed Principal of Hudson High School. Defendant Stapelfeld is sued in his personal and official capacities.

2.5     Defendant David Champigny is currently and was at all times relevant to this Complaint the duly-appointed Assistant Principal of Hudson High School. Defendant Champigny is sued in his personal and official capacities.

2.6     Defendant Dr. Sheldon Berman is currently and was at all times relevant to this Complaint the duly-appointed Superintendent of Schools for Hudson Public Schools. Hudson Public Schools is an entity created and existing under the laws of the Commonwealth of Massachusetts for the purpose of operating schools within Middlesex County, Massachusetts.

2.7     Defendant Town of Hudson, Massachusetts, is a duly constituted municipality in Middlesex County, Massachusetts.

2.8     Defendant Hudson High School is a public high school located in and owned by the town of Hudson, Massachusetts, and is a division of Hudson Public Schools.

**FACTUAL HISTORY**

3.1     Plaintiff Christopher Bowler ("Christopher") was, at all pertinent times, a senior at Hudson High School, and president of the Hudson High School Conservative Club, who graduated in June of 2005. Plaintiffs Joseph Bowler and Kimberly Bowler, were, and continue to be students at Hudson High School, and will continue to be members of the Hudson High School Conservative Club in the coming school year.

3.2     During his junior year at Hudson High School, Christopher Bowler observed a steady stream of comments and actions on the part of the faculty, administration, and students at Hudson High School which were critical of the policies of the United States and of conservative political leaders. Classroom discussion involved talking points that were anti-

3

American and anti-conservative, including one teacher labeling President George W. Bush a "deserter." Another teacher showed Christopher's class an effigy of President Bush with simulated flames and encouraged students to attend an anti-Bush rally at which a life-size effigy of President Bush would be set on fire.

3.3     These teachers and administrators mocked and derided anyone who held conservative political beliefs, including plaintiffs and many of their friends.

3.4     When these and similar incidents are reported to administrators, including Defendant Stapelfeld, administrators promised to take strong action.

3.5     Notwithstanding the administrators' promise, incidents of anti-American, anti-Bush and anti-conservative comments and conduct by teachers at Hudson High School continued. One teacher displayed an anti-Bush poster on the wall of a classroom, which remained up for two months before Defendant Berman sought to have it removed.

3.6     On other occasions, Christopher was told that he is "ignorant" and an idiot because the Plaintiff supported the policies of the United States and President Bush.

3.7     In the days leading up to the 2004 Presidential election, many teachers openly derided President Bush and openly supported Senator John Kerry. "Fahrenheit 9/11," a film directed by Michael Moore which was overtly critical of President Bush and his administration, was shown in classrooms at Hudson High School. The film also contained graphic violence, including videotaped footage of a beheading. One teacher requested that Christopher view the film, and although he initially declined to do so, the teacher persisted until the Christopher agreed to watch the film at home.

3.8     Because of the persistent anti-American, anti-Bush, anti-conservative environment at Hudson High School, Christopher and another student, James Milello, decided to form a club that would serve as a forum for pro-American, pro-conservative dialogue and speech, and to advocate respect and tolerance for their point of view at the school. The club was named the Hudson High School Conservative Club.

3.9     Christopher and Milello chose to be affiliated with a national organization,

4

High School Conservative Clubs of America (HSCCA). The mission statement of HSCCA, is as follows:

> The objective of High School Conservative Clubs of America (HSCCA) is to support the United States Constitution, uphold the Bill of Rights, advocate the moral standards of our Founding Fathers, encourage traditional American values, and assist students to form chartered conservative clubs in high schools throughout the nation. We promote the pillars of the Bible, patriotism and conservative beliefs as balance to the mostly "liberal" viewpoints of teachers. Our chartered clubs invite open debate and honest, non-violent, differences of opinion by inviting guest speakers to share outside viewpoints; and we encourage a balanced classroom environment by promoting unbiased teaching.

The mission statement and other information relevant to current public affairs, commentary, and the activities of the HSCCA are shown at its website, the URL address of which is www.hscca.org.

3.10   Christopher and Milello obtained a teacher sponsor and was formally recognized by Defendant Stapelfeld as a Hudson High School student club in the Fall of 2004. Hudson High School grants the opportunity to non-curriculum related student groups to meet on school property during non-instructional time and grants such student groups access to school facilities for activities of such groups.

3.11   The Plaintiffs, Milello, and other Conservative Club members prepared ten posters that were posted on walls and bulletin boards throughout Hudson High School on Friday November 12, 2004, for the purpose of publicizing the existence of the club, its purpose, its message and its meetings. The posting of posters on authorized places in Hudson High School is a privilege that is granted to all recognized student clubs at Hudson High School.

3.12   The posters included information about the club and a reference to the website address of HSCCA.

3.13   The following Monday, November 15, 2004, Christopher was called to the office of Defendant Champigny. When he arrived at the office, Christopher found that seven of the ten club posters had been taken down and were in the office. When Christopher asked why the posters were removed, Defendant Champigny told him that the HSCCA website

5

promotes violence and is anti-gay.

3.14   When Christopher requested a further explanation of why the posters were removed, he was told by Defendant Stapelfeld that because the HSCCA website contained references to visual depictions of beheadings of hostages by Iraqi insurgents and terrorists and offered "links" to such depictions, the posters promoted violence, were inappropriate and could not remain posted.

3.15   Neither the references to Iraqi beheadings at the HSCCA website nor any other content accessible at that website promote or encourage violence.  In fact, the references to beheadings at the website convey the strongest possible condemnation of those brutal and cowardly acts.  Additionally, the HSCCA website does not contain anti-gay content, but simply contains information in opposition to same-sex marriage, a matter of national and public concern.

3.16   After the club posters were posted, Christopher was confronted and challenged by teachers at Hudson High School regarding content on the HSCCA website, including the website's opinions supporting of the Second Amendment, disbanding the National Education Association, and protecting traditional marriage.

3.17   At the ensuing meeting of the club, the club's teacher sponsor informed the Plaintiffs and other persons at the meeting that the club's posters may be put back up and those posters could include the HSCCA web address.

3.18   The Plaintiffs and others prepared new club posters, one of which includes a reference to the HSCCA website and web address, which were again posted in authorized places throughout Hudson High School on January 7, 2005.

3.19   On January 7, 2005, Christopher was again called to Defendant Champigny's office.  When Christopher arrived at the office, he was handed the club poster which contained the HSCCA website address.

3.20   Christopher also was handed a letter by Defendant Champigny under Champigny's signature.  In the letter, Defendant Champigny confirmed that Defendant

6

Stapelfeld requested that the club not post the HSCCA website address on its signs. Defendant Champigny wrote that the club could post signs without the website address and that he was returning signs to the Plaintiff to make the required changes. A copy of this letter is attached to the First Amended Complaint as Exhibit A.

    3.21    The removal and censorship of the club's posters was the subject of news coverage by media in Massachusetts and nationally. In response to this publicity, Defendant Berman requested a meeting with Christopher and other club members.

    3.22    During this meeting, Defendant Berman affirmed and ratified the decisions and actions of Defendants Stapelfeld and Champigny regarding inclusion of the HSCCA website address on club posters. Defendant Berman stated during this meeting that he found the tone of some of the content on the HSCCA strident and problematic.

    3.23    The Hudson High School student newspaper was allowed to print the website address for HSCCA in a story regarding the club and its posters.

    3.24    A second meeting was held between the Plaintiffs and other members of the Club and Defendant Berman. At this meeting, Defendant Berman again affirmed, ratified and adopted the decision of Defendants Stapelfeld and Champigny that the club could not include the website address of HSCCA on its posters and signs.

    3.25    In January 2005, the Plaintiffs sought the assistance of the Pacific Justice Institute, a California-based organization specializing in civil liberties advocacy. The Pacific Justice Institute wrote a letter dated February 7, 2005, to Defendant Stapelfeld on behalf of Christopher, informing Defendant Stapelfeld that his censorship of the club's posters was contrary to the constitutional rights of the Plaintiffs and other club members. Neither the Plaintiffs nor the Pacific Justice Institute received any response from Defendant Stapelfeld or any other representative of Hudson High School or the Hudson Public Schools.

    3.26    On March 8, Mr. Charles Haynes, director of the First Amendment Schools project of Freedom Forum, in Arlington, Virginia, visited Hudson High School to interview the Conservative Club members concerning the controversy. Hudson High School is one of

only 11 pilot schools in the USA which participate in that "First Amendment Schools" program, and receives grant money from that organization.

3.27   At that meeting, Mr. Haynes suggested that the school First Amendment Coordinator, teacher Brian Daniels, should try to assure that people with opposing viewpoints feel comfortable. He was concerned that the school was not handling the situation correctly.

3.28   On March 9, 2005, the Club held a meeting and sponsored a lecture by Mr. Michael Forrest on the need to preserve traditional marriage. Brian Daniels, the First Amendment Coordinator, and Gail Lamere, also a teacher at Hudson High School, both attended the meeting.

3.29   In the midst of Mr. Forrest's presentation, Daniels, the First Amendment Coordinator, interrupted and challenged an assertion made by Mr. Forrest. Mr. Forrest respectfully requested that questions be held until after his presentation.

3.30   At the conclusion of Mr. Forrest's presentation, Daniels and Lamere aggressively challenged Forrest. They accused Mr. Forrest of being an extremist on homosexuality, of vilifying homosexuals, and otherwise attempted to intimidate and harass Mr. Forrest.

3.31   To date, Plaintiffs have not been allowed to put up Club posters with the Club website address. The website now contains articles describing the bias and suppression of free speech at Hudson High School. Plaintiffs' opinions have continued to be censored and posters have been removed. Teachers continued to treat plaintiffs with disrespect because of their viewpoint and opinions.

3.32   At all times, the plaintiffs comported themselves in a peaceable manner, and caused no disruption or disorder within the school. They showed respect to the defendant school officials and to the hostile teachers, despite their actions to deprive them of their protected right of expression.

**FIRST CLAIM**
Free Speech Clause
U.S. Const. Amend. 1

4.1   The Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1.1 through 3.32 set forth above.

4.2   The Defendants' actions in removing, converting, and censoring posters of the Hudson High School Conservative Club and in restricting the content of those signs deprived and continues to deprive the Plaintiffs and other members of the Hudson High School Conservative Club of their right to free speech and expression guaranteed by the First Amendment to the United States Constitution.

4.3   In removing, converting, and censoring the Hudson High School Conservative Club posters and in issuing orders that the content of the posters be restricted, the Defendants have acted and continue to act under color of the law of the Commonwealth of Massachusetts.

4.4   Under 42 U.S.C. § 1983, the Plaintiffs are entitled to damages for conversion of plaintiff's posters, and to injunctive and declaratory relief for this deprivation of rights secured by the Constitution of the United States.

**SECOND CLAIM**
Free Speech Clause
Massachusetts Declaration of Rights - Art. XVI
Massachusetts Civil Rights Law - M.G.L. Ch. 12 §11I

5.1   The Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1.1 through 4.4 set forth above.

5.2   The Defendants' actions in removing, converting, and censoring posters of the Hudson High School Conservative Club and in restricting the content of those signs deprived and continue to deprive the Plaintiffs and other members of the Hudson High School Conservative Club of their right to free speech and expression guaranteed by Article XVI of the Massachusetts Declaration of Rights.

5.3     In removing, converting, and censoring the Hudson High School Conservative Club posters and in issuing orders that the content of the posters be restricted, the Defendants acted with threats, intimidation, and coercion.

5.4     The Plaintiff is entitled to damages for conversion of the Club's posters, and to injunctive and declaratory relief for this deprivation of rights secured by the Constitution of the Commonwealth of Massachusetts, and under M.G.L. Ch. 12 §11I.

**THIRD CLAIM**
Equal Access Act – 20 U.S.C. § 4071

6.1     The Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1.1 through 5.4 set forth above.

6.2     Defendant Hudson High School is a public secondary school that receives Federal Financial Assistance.

6.3     Hudson High School created a limited public forum for non-curriculum related student groups for the purposes of 20 U.S.C. § 4071.

6.4     The actions and decisions of the Defendants in removing and censoring the posters of the Hudson High School Conservative Club have denied and continue to deny the Club and its members, including the Plaintiffs, equal access to and a fair opportunity to use the limited public forum created by Hudson High School, and constitutes discrimination against Hudson High School Conservative Club and the Plaintiffs on the basis of the Club's political viewpoint.

6.5     The Defendants' actions in this regard have deprived and continue to deprive the Plaintiffs and other Club member of rights secured by the Equal Access Act, 20 U.S.C. § 4071, and for such deprivation the Plaintiffs are entitled to declaratory and injunctive relief under 42 U.S.C. § 1983.

## FOURTH CLAIM
Right of Students to Free Expression – Mass. Gen. Laws ch. 71, § 82

7.1     The Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1.1 through 6.5 set forth above.

7.2     The posters of the Hudson High School Conservative Club and messages thereon constitute student expression protected by Mass. Gen. Laws ch. 71, § 82.

7.3     The posters of the Hudson High School Conservative Club and messages thereon did not cause disruption at the high school nor could any such disruption of the school reasonably anticipated.

7.4     The Defendants' actions in removing and censoring the posters of the Hudson High School Conservative Club and messages thereon constitutes abridgement of the right to free expression of the Plaintiffs and other members of the Hudson High School Conservative Club in violation of Mass. Gen. Laws ch. 71, § 82.

7.5     The plaintiffs are entitled to declaratory and injunctive relief for the defendants' deprivation of their protected right to free expression under that statute.

## FIFTH CLAIM
Equal Protection Clause—U.S. Const. Amend. XIV

8.1     The Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1.1 through 7.5 above.

8.2     The Defendants' actions in removing and censoring posters of the Hudson High School Conservative Club and in restricting the content of those signs was intentionally based upon the viewpoint of the expression and speech engaged in by the Plaintiff and the Hudson High School Conservative Club and deprived and continues to deprive the Plaintiffs and other members of the Hudson High School Conservative Club of rights and privileges otherwise afforded by the Defendants to other similarly situated persons and clubs.

8.3     The Defendants' actions in removing and censoring posters of the Hudson

High School Conservative Club and in restricting the content of those signs constitutes intentional discrimination against the Plaintiffs and other members of the Hudson High School Conservative Club that is irrational, invidious and without any rational basis.

8.4     In removing and censoring the Hudson High School Conservative Club posters and in issuing orders that the content of the posters be restricted, the Defendants have acted and continue to act under color of the law of the Commonwealth of Massachusetts.

8.5     The aforesaid conduct of the Defendants has and continues to deprive the Plaintiffs and other members of the Hudson High School Conservative Club of their right to equal protection of the law guaranteed by U.S. Const. amend. XIV.

8.6     Under 42 U.S.C. § 1983, the Plaintiffs are entitled to declaratory and injunctive relief for this deprivation of rights secured by the Constitution of the United States.

### SIXTH CLAIM
Equal Rights—Mass. Const. Amendment CVI

9.1     The Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1.1 through 8.6 set forth above.

9.2     The Defendants' actions in removing and censoring posters of the Hudson High School Conservative Club and in restricting the content of those signs was intentionally based upon the viewpoint of the expression and speech engaged in by the Plaintiffs and the members of the Hudson High School Conservative Club and deprived and continues to deprive the Plaintiffs and other members of the Hudson High School Conservative Club of rights and privileges otherwise afforded by the Defendants to other similarly situated persons and clubs.

9.3     The Defendants' actions in removing and censoring posters of the Hudson High School Conservative Club and in restricting the content of those signs constitutes intentional discrimination against the Plaintiffs and other members of the Hudson High School Conservative Club that is irrational, invidious and without any rational basis.

9.4     In removing and censoring the Hudson High School Conservative Club posters

and in issuing orders that the content of the posters be restricted, the Defendants have acted and continue to act under color of the law of the Commonwealth of Massachusetts.

9.5   The aforesaid conduct of the Defendants has and continues to deprive the Plaintiffs and other members of the Hudson High School Conservative Club of their right to equal protection of the law guaranteed by Mass. Const. Amendment CVI..

9.6   The Plaintiffs are entitled to relief for this deprivation of rights secured by the Constitution of the Commonwealth of Massachusetts.

**WHEREFORE**, the Plaintiffs request that judgment be entered in their favor in the following respects:

A.   That a preliminary injunction be issued ordering the Defendants, and those acting as Defendants' officers and agents, to refrain from preventing the Plaintiffs and other members of the Hudson High School Conservative Club from posting signs and posters, or from showing the website address of the High School Conservative Clubs of America;

B.   That judgment be entered declaring that the Defendants have violated the rights of the Plaintiffs and other member of the Hudson High Conservative Club under U.S. Const. Amend. I, Mass. Const. art. XVI, 20 U.S.C. § 4071, Mass. Gen. Laws, ch. 71, § 82, and Mass. Const. Amendment CVI;

C.   That the Defendants, and those acting as Defendants' officers and agents, be permanently enjoined from taking any action to prevent the Plaintiffs and other members of the Hudson High School Conservative Club from posting signs and posters showing the website address of the High School Conservative Clubs of America;

D.   That judgment be entered granting the Plaintiffs nominal damages for violation of the plaintiff's protected rights, and damages for conversion of his posters;

E. That judgment be entered awarding the Plaintiffs their costs and attorneys' fees under 42 U.S.C. § 1988 and M.G.L. Ch. 12 §11I; and

F. Such other and further relief as this Court may deem just and proper.

Dated this 27th day of July, 2005.

Respectfully submitted,

/s/ Gregory A. Hession
Gregory A. Hession, J.D.
LAW OFFICES OF GREGORY A. HESSION
172 Thompson Street.
Springfield, MA  01109
(413) 746-3333
Fax:  (413) 746-6161

Participating Attorney for
The Rutherford Institute

COUNSEL FOR THE PLAINTIFF