**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER BOWLER, | ) | |
| | ) | |
| HUDSON HIGH SCHOOL | ) | |
| CONSERVATIVE CLUB, an | ) | |
| unincorporated association, | ) | |
| | ) | |
| JOSEPH T. BOWLER, | ) | |
| | ) | |
| KIMBERLY A. BOWLER, by and | ) | |
| through her father and next friend, | ) | |
| STEVEN BOWLER, | ) | |
| | ) | |
| *Plaintiff*s, | ) | |
| | ) | |
| v. | ) | Case No. **05 CV 11007 PBS** |
| | ) | |
| JOHN STAPELFELD, in his | ) | |
| individual and official capacities as | ) | |
| principal of Hudson High School, | ) | |
| | ) | |
| DAVID CHAMPIGNY, in his individual | ) | |
| and official capacities as assistant | ) | |
| principal of Hudson High School, and | ) | |
| | ) | |
| DR. SHELDON BERMAN, in his | ) | |
| individual and official capacities as | ) | |
| Superintendent of Hudson Public | ) | |
| School District, | ) | |
| | ) | |
| THE TOWN of HUDSON, | ) | |
| MASSACHUSETTS, | ) | |
| | ) | |
| HUDSON HIGH SCHOOL, | ) | |
| | ) | |
| *Defendants.* | ) | |

## *Second Amended* COMPLAINT

COME NOW the Plaintiffs, by and through counsel, Gregory A. Hession,

participating attorney for The Rutherford Institute, and make their ***Second Amended***

1

Complaint as follows:

## JURISDICTION AND VENUE

1.1    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343, as it is an action seeking redress under the laws and statutes of the United States for deprivation of rights secured by the Constitution and laws of the United States.

1.2    This Court has jurisdiction over the Plaintiff's claims arising under the Constitution and laws of the Commonwealth of Massachusetts pursuant to 28 U.S.C. § 1367(a), as such claims are part of the same case or controversy as those giving rise to the claims over which this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

1.3    Venue properly lies in this Court under 28 U.S.C. § 1391(b), as the Defendants all reside within the Commonwealth of Massachusetts and a substantial part of the events giving rise to this action occurred within the Commonwealth of Massachusetts.

## PARTIES

2.1    The Plaintiff, Christopher Bowler, ("Christopher"), is a resident of Hudson, Middlesex County, Massachusetts. The Plaintiff has graduated from Hudson High School, but was enrolled as a student there during times relevant to this Complaint.

2.2    The Plaintiff, Joseph T. Bowler, ("Joseph"), is a resident of Hudson, Middlesex County, Massachusetts. The Plaintiff is currently enrolled as a student at Hudson High School, and was so enrolled at all times relevant to this Complaint, and was a member of the Hudson High School Conservative Club.

2.3    The Plaintiff, Kimberly A. Bowler, ("Kimberly"), age 16, is a resident of Hudson, Middlesex County, Massachusetts, and brings this complaint by and through her natural father, Steven B. Bowler, of Hudson, Massachusetts . The Plaintiff is currently enrolled as a student at Hudson High School, and was so enrolled at all times relevant to this Complaint, and was a member of the Hudson High School Conservative Club.

2

2.4    Defendant John Stapelfeld is currently and was at all times relevant to this Complaint the duly-appointed Principal of Hudson High School.  Defendant Stapelfeld is sued in his personal and official capacities.

2.5    Defendant David Champigny is currently and was at all times relevant to this Complaint the duly-appointed Assistant Principal of Hudson High School.  Defendant Champigny is sued in his personal and official capacities.

2.6    Defendant Dr. Sheldon Berman is currently and was at all times relevant to this Complaint the duly-appointed Superintendent of Schools for Hudson Public Schools.  Hudson Public Schools is an entity created and existing under the laws of the Commonwealth of Massachusetts for the purpose of operating schools within Middlesex County, Massachusetts.

2.7    Defendant Town of Hudson, Massachusetts, is a duly constituted municipality in Middlesex County, Massachusetts.

2.8    Defendant Hudson High School is a public high school located in and owned by the town of Hudson, Massachusetts, and is a division of Hudson Public Schools.


**FACTUAL HISTORY**

3.1    Plaintiff Christopher Bowler was, at pertinent times, a senior at Hudson High School, and president of the Hudson High School Conservative Club, who graduated in June of 2005.  Plaintiffs Joseph Bowler and Kimberly Bowler, were, and continue to be students at Hudson High School, were members of the Hudson High School Conservative Club until the defendants committed the acts complained of herein.  They yet aspire to be members of the Hudson High School Conservative Club in the coming school year, if they can do so free from the acts of the defendants complained of herein.

3.2    During his junior year at Hudson High School, Christopher Bowler observed a steady stream of comments and actions on the part of the faculty, administration, and students at Hudson High School which were critical of the policies of the United States and

of conservative political leaders. Classroom discussion involved talking points that were anti-American and anti-conservative, including one teacher labeling President George W. Bush a "deserter." Another teacher showed Christopher's class an effigy of President Bush with simulated flames and encouraged students to attend an anti-Bush rally at which a life-size effigy of President Bush would be set on fire.

3.3    These teachers and administrators mocked and derided anyone who held conservative political beliefs, including plaintiffs and many of their friends.

3.4    When these and similar incidents are reported to administrators, including Defendant Stapelfeld, administrators promised to take strong action.

3.5    Notwithstanding the administrators' promise, incidents of anti-American, anti-Bush and anti-conservative comments and conduct by teachers at Hudson High School continued. One teacher displayed an anti-Bush poster on the wall of a classroom, which remained up for two months before Defendant Berman sought to have it removed.

3.6    On other occasions, Christopher was told that he is "ignorant" and an "idiot" because the Plaintiff supported the policies of the United States and of President Bush.

3.7    In the days leading up to the 2004 Presidential election, many teachers openly derided President Bush and supported Senator John Kerry. "Fahrenheit 9/11," a film directed by Michael Moore which was overtly critical of President Bush and his administration, was shown in classrooms at Hudson High School. The film also contained graphic violence, including videotaped footage of a beheading. One teacher requested that Christopher view the film, and although he initially declined to do so, the teacher persisted until the Christopher agreed to watch the film at home. The school showed the Steven Spielberg film "Schindler's List" to ninth grade students, a film which showed horrific violence and nudity.

3.8    Because of the persistent anti-American, anti-Bush, anti-conservative environment at Hudson High School, Christopher and another student, James Milello, decided to form a club that would serve as a forum for pro-American, pro-conservative dialogue and speech, and to advocate respect and tolerance for their point of view at the

school.  The club was named the Hudson High School Conservative Club.

3.9     Christopher and Milello chose to be affiliated with a national organization, High School Conservative Clubs of America (HSCCA).  The mission statement of HSCCA, is as follows:

> The objective of High School Conservative Clubs of America (HSCCA) is to support the United States Constitution, uphold the Bill of Rights, advocate the moral standards of our Founding Fathers, encourage traditional American values, and assist students to form chartered conservative clubs in high schools throughout the nation. We promote the pillars of the Bible, patriotism and conservative beliefs as balance to the mostly "liberal" viewpoints of teachers. Our chartered clubs invite open debate and honest, non-violent, differences of opinion by inviting guest speakers to share outside viewpoints; and we encourage a balanced classroom environment by promoting unbiased teaching.

The mission statement and other information relevant to current public affairs, commentary, and the activities of the HSCCA are shown at its website, the URL address of which is www.hscca.org.

3.10     Christopher and Milello obtained a teacher sponsor, and obtained formal recognition by Defendant Stapelfeld for the Hudson High School Conservative Club, as an official student club, in the Fall of 2004.  Hudson High School grants the opportunity to non-curriculum related student groups to meet on school property during non-instructional time, and grants such student groups access to school facilities for activities of such groups.

3.11     The Plaintiffs, Milello, and other Conservative Club members prepared ten posters that were posted on walls and bulletin boards throughout Hudson High School on Friday November 12, 2004, for the purpose of publicizing the existence of the club, its purpose, its message and its meetings.  At that time, the posting of posters on authorized places in Hudson High School was a privilege that was granted to all recognized student clubs at Hudson High School.

3.12     The posters included information about the club and a reference to the website address of HSCCA.

3.13     The following Monday, November 15, 2004, Christopher was called to the office of Defendant Champigny.  When he arrived at the office, Christopher found that seven

of the ten club posters had been taken down and were in the office.  When Christopher asked why the posters were removed, Defendant Champigny told him that the HSCCA website promotes violence and is anti-gay.  This restriction on the plaintiff's speech occurred before the club even had its first meeting.  Nine of the ten posters were thrown away by defendants or their agents.

3.14    When Christopher requested a further explanation of why the posters were removed, he was told by Defendant Stapelfeld that because the HSCCA website contained references to visual depictions of beheadings of hostages by Iraqi insurgents and terrorists, and offered "links" to such depictions, that the posters promoted violence, were inappropriate, and could not remain posted.  Principal Staplefeld revealed his overt bias against the content of the plaintiffs' expression when he stated that the posters were removed because the club wasn't "neutral on issues", and when he told the MetroWest Daily News, "What started out as a great idea drifted from true conservative values to reactionary."

3.15    Neither the references to Iraqi beheadings at the HSCCA website, nor any other content accessible at that website, promote or encourage violence.  In fact, the references to beheadings at the website convey the strongest possible condemnation of those brutal and cowardly acts.  Additionally, the HSCCA website does not contain anti-gay content, but simply contains information in opposition to same-sex marriage, a matter of national and public concern and debate.

3.16    After the club posters were posted, Christopher was confronted and challenged by teachers at Hudson High School regarding content on the HSCCA website, including the website's opinions supporting the Second Amendment, advocating disbanding the National Education Association, and protecting traditional marriage.

3.17    At the ensuing meeting of the club, the club's teacher sponsor informed the Plaintiffs and other persons at the meeting that the club's posters may be put back up and those posters could include the HSCCA web address.

3.18    The Plaintiffs and others then prepared new club posters, one of which

included a reference to the HSCCA website and web address, which were again posted in authorized places throughout Hudson High School on January 7, 2005.

3.19     On January 7, 2005, Christopher was again called to Defendant Champigny's office.  When Christopher arrived at the office, he was handed the new club poster which contained the HSCCA website address.

3.20     Christopher also was handed a letter by Defendant Champigny under Champigny's signature.  In the letter, Defendant Champigny confirmed that Defendant Stapelfeld requested that the club not post the HSCCA website address on its signs. Defendant Champigny wrote that the club could post signs without the website address and that he was returning signs to the Plaintiff to make the required changes.  A copy of this letter is attached to the Second Amended Complaint as Exhibit A.

3.21     The second removal and censorship of the club's posters was the subject of news coverage by media in Massachusetts and nationally.  In response to this publicity, Defendant Berman requested a meeting with Christopher and other club members.

3.22     During this meeting, Defendant Berman affirmed and ratified the decisions and actions of Defendants Stapelfeld and Champigny regarding exclusion of the HSCCA website address on club posters.  Defendant Berman stated during this meeting that he found the tone of some of the content on the HSCCA web site strident and problematic, and showed an obvious bias against the content of plaintiffs' political views and their expression at Hudson High School.

3.23     The Hudson High School student newspaper was allowed to print the website address for HSCCA in a story regarding the club and its posters.  The school library contains several publications listing the website address, including editions of *The Boston Globe, The Metrowest Daily News, The Christian Science Monitor,* and *USA Today.*  The websites of these publications also contain the HSCCA website address, and are not blocked in the school.

3.24     A second meeting was held between the Plaintiffs and other members of the

Club and Defendant Berman.  At this meeting, Defendant Berman again affirmed, ratified and adopted the decision of Defendants Stapelfeld and Champigny that the club could not include the website address of HSCCA on its posters and signs.

      3.25    In January 2005, the Plaintiffs sought the assistance of the Pacific Justice Institute, a California-based organization specializing in civil liberties advocacy.  The Pacific Justice Institute wrote a letter dated February 7, 2005,  to Defendant Stapelfeld on behalf of Christopher, informing Defendant Stapelfeld that his censorship of the club's posters was contrary to the constitutional rights of the Plaintiffs and other club members.  Neither the Plaintiffs nor the Pacific Justice Institute received any response from Defendant Stapelfeld or any other representative of Hudson High School or the Hudson Public Schools.

      3.26    On February 8, 2005, the Hudson School Committee passed the first version of its two written policies entitled, "Distribution and Posting of Written Material for Students in Schools" and "Posters Announcing Meetings or Events Sponsored by Student Groups", attached as Exhibit "B " and "C" respectively.  The policies define material which can be posted in vague terms, and require prior approval of the school principal prior to posting, with the effect  that virtually any speech can be prohibited or allowed at the whim of the principal or superintendent.  The policies proscribe material which is "immoral" or "vulgar", without defining those terms or stating whose morality is to be the standard.  The policies are internally inconsistent, and allow the administration to trample on the rights of students, as protected by federal and state law.  They permit everything or nothing, at the whim of the superintendent or principal.

      3.27    On March 8, Mr. Charles Haynes, director of the First Amendment Schools project of Freedom Forum, in Arlington, Virginia, visited Hudson High School to interview the Conservative Club members concerning the controversy.  Hudson High School is one of only 11 pilot schools in the USA which participate in that "First Amendment Schools" program, and receives grant money from that organization.

      3.28    At that meeting, Mr. Haynes suggested that the school First Amendment

Coordinator, teacher Brian Daniels, should try to assure that people with opposing viewpoints feel comfortable. He was concerned that the school was not handling the situation correctly.

3.29    On March 9, 2005, the Conservative Club held a meeting and sponsored a lecture by Mr. Michael Forrest on the need to preserve traditional marriage. Brian Daniels, the First Amendment Coordinator, and Gail Lamere, also a teacher at Hudson High School, both attended the meeting.

3.30    In the midst of Mr. Forrest's presentation, Daniels, the First Amendment Coordinator, interrupted and challenged an assertion made by Mr. Forrest. Mr. Forrest respectfully requested that questions be held until after his presentation.

3.31    At the conclusion of Mr. Forrest's presentation, Daniels and Lamere aggressively challenged Forrest. They accused Mr. Forrest of being an extremist on homosexuality, of vilifying homosexuals, and otherwise attempted to intimidate and harass Mr. Forrest.

3.32    To date, Plaintiffs have not been allowed to put up Club posters with the Club website address. The website now contains articles describing the bias and suppression of free speech at Hudson High School. Plaintiffs' opinions have continued to be censored and posters have been removed. Teachers continued to treat plaintiffs with disrespect because of their viewpoint and opinions. The HSCCA web site is blocked on school computers.

3.33    At all times, the plaintiffs comported themselves in a peaceable manner, and caused no disruption or disorder within the school. They showed respect to the defendant school officials and to the hostile teachers, despite their disrespectful and unlawful actions to deprive them of their protected right of expression.

3.34    During the 2005-2006 school year, the plaintiffs Joseph and Kimberly did not convene any meetings of The Conservative Club, due to the hostile and intolerant speech climate created by the defendants, the bias shown toward the plaintiffs due to their political views, the unrestrained harassment in the school by faculty and administration, the difficulty

in securing a new advisor, the concern for academic retaliation, and fear of the consequences to their college prospects, all of which chilled the plaintiffs' free speech. However, the plaintiffs, at all times, have wanted to re-convene the club if and when they could be assured that they could do so without retribution against them by defendants enumerated herein.

3.35    During the 2006-2007 school year, Joseph and Kimberly continue to want to revive The Conservative Club, pending a favorable outcome to this action.

3.36    At the time of the original events complained of, there was no written policy in place to prohibit the placing of the plaintiff's posters.

3.37    The school allows the Gay-Straight Alliance and the Green Club to advocate for their views at the High School, without being harassed or censored. These viewpoints would be considered by some significant portion of the student body as "immoral", in violation of the specific wording of the Hudson "posting" policy. By contrast, discrimination against the plaintiffs is based on the content of their opinions and viewpoint.

3.38    Even though students have expressed disagreement with the plaintiffs' opinions, no student has complained to the plaintiffs or defendants, seeking to suppress the expression of the plaintiffs' viewpoints.

**FIRST CLAIM**
Free Speech Clause
U.S. Const. Amend. 1
42 U.S.C. §1983

4.1    The Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1.1 through 3.38 set forth above.

4.2    The Defendants' actions in removing, converting, and censoring posters of the Hudson High School Conservative Club, and in restricting the content of those signs, deprived and continues to deprive the Plaintiffs and other members of the Hudson High School Conservative Club of their right to free speech and expression guaranteed by the First Amendment to the United States Constitution.

4.3    In removing, converting, and censoring the Hudson High School Conservative

Club posters and in issuing orders that the content of the posters be restricted, the Defendants have acted and continue to act under color of the law of the Commonwealth of Massachusetts.

4.4    The published policies of the Hudson School Committee entitled "Distribution and Posting of Written Materials for Students in Schools" and "Posters Announcing Meetings or Events Sponsored by Student Groups" improperly restrict the protected right to free speech and expression guaranteed by the First Amendment to the United States Constitution.

4.5    The published policies of the Hudson School Committee entitled "Distribution and Posting of Written Materials for Students in Schools" and "Posters Announcing Meetings or Events Sponsored by Student Groups", attached as Exhibits "B" and "C", are vague and overbroad, and thus improperly restrict the Plaintiffs' protected right to free speech and expression guaranteed by the First Amendment to the United States Constitution.

4.6    Under 42 U.S.C. § 1983, the Plaintiffs are entitled to damages for conversion of plaintiff's posters, and to injunctive and declaratory relief for this deprivation of rights secured by the Constitution of the United States.

**SECOND CLAIM**
Free Speech Clause
Massachusetts Declaration of Rights - Art. XVI
Massachusetts Civil Rights Law - M.G.L. Ch. 12 §11I

5.1    The Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1.1 through 4.6 set forth above.

5.2    The Defendants' actions in removing, converting, and censoring posters of the Hudson High School Conservative Club and in restricting the content of those signs deprived and continue to deprive the Plaintiffs and other members of the Hudson High School Conservative Club of their right to free speech and expression guaranteed by Article

XVI of the Massachusetts Declaration of Rights.

5.3    The published policies of the Hudson School Committee entitled "Distribution and Posting of Written Materials for Students in Schools" and "Posters Announcing Meetings or Events Sponsored by Student Groups", attached as Exhibits "B" and "C", are vague and overbroad, and thus improperly restrict the Plaintiffs' protected right to free speech and expression guaranteed by Article XVI of the Massachusetts Declaration of Rights.

.    5.4    In removing, converting, and censoring the Hudson High School Conservative Club posters, in issuing orders that the content of the posters be restricted, and in publishing the policies attached as Exhibits "B" and "C", the Defendants  acted with threats, intimidation, and coercion.

5.5    The Plaintiff is entitled to damages for conversion of the Club's posters, and to injunctive and declaratory relief for this deprivation of rights secured by the Constitution of the Commonwealth of Massachusetts, and under M.G.L. Ch. 12 §11I.


**THIRD CLAIM**
Equal Access Act – 20 U.S.C. § 4071

6.1    The Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1.1 through 5.5 set forth above.

6.2    Defendant Hudson High School is a public secondary school that receives Federal Financial Assistance.

6.3    Hudson High School created a limited public forum for non-curriculum related student groups for the purposes of 20 U.S.C. § 4071.

6.4    The actions and decisions of the Defendants in removing and censoring the posters of the Hudson High School Conservative Club, and by publishing and enforcing the policies attached as Exhibits "B" and "C", they have denied and continue to deny the Club and its members, including the Plaintiffs, equal access to and a fair opportunity to use the

limited public forum created by Hudson High School, and constitute discrimination against Hudson High School Conservative Club and the Plaintiffs on the basis of the Club's political viewpoint.

6.5    The Defendants' actions in this regard have deprived and continue to deprive the Plaintiffs and other Club member of rights secured by the Equal Access Act, 20 U.S.C. § 4071, and for such deprivation the Plaintiffs are entitled to declaratory and injunctive relief under 42 U.S.C. § 1983.

**FOURTH CLAIM**
Right of Students to Free Expression – Mass. Gen. Laws ch. 71, § 82

7.1    The Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1.1 through 6.5 set forth above.

7.2    The posters of the Hudson High School Conservative Club and messages thereon constitute student expression protected by Mass. Gen. Laws ch. 71, § 82.

7.3    The posters of the Hudson High School Conservative Club and messages thereon did not cause disruption at the high school nor could any such disruption of the school reasonably anticipated.

7.4    The Defendants' actions in removing and censoring the posters of the Hudson High School Conservative Club and messages thereon,  and by publishing and enforcing the policies attached as Exhibits "B" and "C", constitute abridgement of the right to free expression of the Plaintiffs and other members of the Hudson High School Conservative Club in violation of Mass. Gen. Laws ch. 71, § 82.

7.5    The plaintiffs are entitled to declaratory and injunctive relief for the defendants' deprivation of their protected right to free expression under that statute.

**FIFTH CLAIM**
Equal Protection Clause—U.S. Const. Amend. XIV

8.1    The Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1.1 through 7.5 above.

8.2    The Defendants' actions in removing and censoring posters of the Hudson High School Conservative Club and in restricting the content of those signs was intentionally based upon the viewpoint of the expression and speech engaged in by the Plaintiff and the Hudson High School Conservative Club and deprived and continues to deprive the Plaintiffs and other members of the Hudson High School Conservative Club of rights and privileges otherwise afforded by the Defendants to other similarly situated persons and clubs.

8.3    The Defendants' actions in removing and censoring posters of the Hudson High School Conservative Club and in restricting the content of those signs constitutes intentional discrimination against the Plaintiffs and other members of the Hudson High School Conservative Club that is irrational, invidious and without any rational basis.

8.4    In removing and censoring the Hudson High School Conservative Club posters and in issuing orders that the content of the posters be restricted, the Defendants have acted and continue to act under color of the law of the Commonwealth of Massachusetts.

8.5    The aforesaid conduct of the Defendants has and continues to deprive the Plaintiffs and other members of the Hudson High School Conservative Club of their right to equal protection of the law guaranteed by U.S. Const. amend. XIV.

8.6    Under 42 U.S.C. § 1983, the Plaintiffs are entitled to declaratory and injunctive relief for this deprivation of rights secured by the Constitution of the United States.

**SIXTH CLAIM**
Equal Rights—Mass. Const. Amendment CVI

9.1    The Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1.1 through 8.6 set forth above.

9.2     The Defendants' actions in removing and censoring posters of the Hudson High School Conservative Club, in restricting the content of those signs, and by publishing and enforcing the policies attached as Exhibits "B" and "C", was intentionally based upon the viewpoint of the expression and speech engaged in by the Plaintiffs and the members of the Hudson High School Conservative Club, and deprived and continues to deprive the Plaintiffs and other members of the Hudson High School Conservative Club of rights and privileges otherwise afforded by the Defendants to other similarly situated persons and clubs.

9.3     The Defendants' actions in removing and censoring posters of the Hudson High School Conservative Club, in restricting the content of those signs, and by publishing and enforcing the policies attached as Exhibits "B" and "C", constitute intentional discrimination against the Plaintiffs and other members of the Hudson High School Conservative Club that is irrational, invidious and without any rational basis.

9.4     In removing and censoring the Hudson High School Conservative Club posters, in issuing orders that the content of the posters be restricted, and by publishing and enforcing the policies attached as Exhibits "B" and "C", the Defendants have acted and continue to act under color of the law of the Commonwealth of Massachusetts.

9.5     The aforesaid conduct of the Defendants has and continues to deprive the Plaintiffs and other members of the Hudson High School Conservative Club of their right to equal protection of the law guaranteed by Mass. Const. Amendment CVI..

9.6     The Plaintiffs are entitled to relief for this deprivation of rights secured by the Constitution of the Commonwealth of Massachusetts.

**WHEREFORE**, the Plaintiffs request that judgment be entered in their favor in the following respects:

A.     That a permanent injunction be issued ordering the Defendants, and those acting as Defendants' officers and agents, to refrain from preventing the Plaintiffs and other members of the Hudson High School Conservative Club from posting signs

and posters, or from showing the website address of the High School Conservative Clubs of America;

B.      That judgment be entered declaring that the Defendants have violated the rights of the Plaintiffs and other member of the Hudson High Conservative Club under U.S. Const. Amend. I, Mass. Const. art. XVI, 20 U.S.C. § 4071, Mass. Gen. Laws, ch. 71, § 82, and Mass. Const. Amendment CVI;

C.      That the Defendants, and those acting as Defendants' officers and agents, be permanently enjoined from taking any action to prevent the Plaintiffs and other members of the Hudson High School Conservative Club from posting signs and posters showing the website address of the High School Conservative Clubs of America;

D.      That the Hudson School policies, "Distribution and Posting of Written Material for Students in Schools" and "Posters Announcing Meetings or Events Sponsored by Student Groups", attached as Exhibit "B " and "C" respectively,be declared unconstitutional on their face and as applied.

E.      That judgment be entered granting the Plaintiffs nominal damages for violation of the plaintiff's protected rights, and damages for conversion of  his posters;

F.      That judgment be entered awarding the Plaintiffs their costs and attorneys' fees under 42 U.S.C. § 1988 and M.G.L. Ch. 12 §11I; and

G.      Such other and further relief as this Court may deem just and proper.


Dated this 23th day of October, 2006.

Respectfully submitted,


/s/ Gregory A. Hession
Gregory A. Hession, J.D.
LAW OFFICES OF GREGORY A. HESSION
172 Thompson Street.
Springfield, MA  01109
(413) 746-3333
Fax:  (413) 746-6161

Participating Attorney for
The Rutherford Institute

COUNSEL FOR THE PLAINTIFF

**Hudson High School**

*Educating for Freedom and Responsibility*

**HUDSON HIGH SCHOOL**
69 Brigham Street
Hudson, MA 01749
www.hudson.k12.ma.us

**ADMINISTRATION**
Tel: 978-567-6250
Fax: 978-567-6255

John H. Stapelfeld x3185
*Principal*

David Champigny x3186
*Vice Principal*

Daniel McAnespie x3176
*Vice Principal*

**GUIDANCE**
978-567-6250

Jennie C. Friss   x3125
Rachael Roux   x3117
Lauren Sanford  x3122
Mary Testa   x3118
Olin Telarea   x3119
Angela Wilcox   x3120
Rebecca Wolfe   x3121

**RESOURCE OFFICER**
978-567-6250   x3126
Officer Craig Perry

**ATHLETICS**
978-567-6250   x1112
Luis Macedo, Director



**HUDSON PUBLIC SCHOOLS MISSION STATEMENT**
Our goal is to promote the intellectual, ethical, and social development of students through a challenging instructional program and a caring classroom and school environment.



**ACCREDITED**
New England Association of Schools and Colleges
Massachusetts State Department of Education



January 7, 2005

Mr. Chris Bowler
4 Martin Circle
Hudson, MA 01749

Dear Chris:

 I am writing to summarize our discussion of the meeting that was held in my office on Friday, January 07, 2005, concerning Mr. Stapelfeld's request that the Conservative Club not post the website www.hscca.org on signs located in the high school.

 When we met this morning, I explained to you that the sign could be posted without displaying the website. I suggested that if you wish to post the website letter instead, you refer to it on the poster, you attach the letter to the sign.

 I returned the poster to you so that you can make the requested edits. I also suggested that if you would like to distribute the letter to the student body, you may wish to publish it in the Hawk Talk.

 If you have any other concerns regarding this matter, feel free to see me.

Sincerely,

David Champigny

DC/dbc

Cc: Dr. Sheldon Berman
  Mr. John Stapelfeld

**EXHIBIT**
**A**

Hudson School Committee Policy | 1700

## DISTRIBUTION AND POSTING OF WRITTEN MATERIALS
## FOR STUDENTS IN SCHOOLS

The Hudson Public Schools and Town of Hudson offer many programs, activities and events that benefit the children of Hudson. In an effort to provide information about upcoming opportunities to participate in programs, events, and activities, Hudson Public Schools will, from time to time, distribute and/or post information about such opportunities. This policy shall apply to programs, activities or events that are 1) sponsored by the Hudson Public Schools; 2) sponsored by Hudson Public Schools' partner organizations (as defined in section F below) and are for the benefit of Hudson students; 3) sponsored by organizations whose sole purpose is to support Hudson Public Schools; and 4) sponsored by the Town of Hudson.

Written materials that are distributed to students and posted must be appropriate for school-aged children. Written materials must not discriminate against nor disparage any group or individual based on race, gender, ethnicity, sexual orientation, color, marital or parental status, religious orientation, national ancestry or origin. Written materials may not threaten or intimidate any group or individual. These written materials may not be unlawful in any way.

All written materials that are distributed to students and posted must abide by the policies of the Hudson School Committee. These written materials must be consistent with the goals of the Hudson Public School District. The district reserves the right not to distribute and/or post written materials that do not meet the standards described herein, or materials that are inappropriate or irrelevant to the activities and events to which the policy applies.

The preferred method of providing information under this policy is by posting it in school buildings rather than distributing materials to each individual student so-as-to minimize the cost and administrative burden to school officials and staff. Materials will be provided to each student when the Superintendent or designee deems it appropriate to do so.

The distribution or posting of written materials outlined in this policy does not pertain to the instructional materials generated by school administrators, teachers, and other staff members.

### A. Written Materials for Students: Distribution to Students and Posting in School Buildings

Written materials of the following type or purpose may be distributed to students and posted in school buildings:

1. Information sent by the Hudson Public School District.
2. Announcements of school events, school sports events, official school club events, and school organization events, including school-sponsored or parent organization-sponsored fund raising.
3. School newsletters, officially sanctioned student newspapers and publications, parent organization newsletters and announcements, and site school council newsletters.
4. Promotions that are directly related to school and classroom activities.
5. Information about upcoming events, programs or activities that are sponsored by the Hudson Park and Recreation Commission or other departments within the Town of Hudson.
6. Information about upcoming events, programs or activities that are sponsored by Hudson Public School partner organizations (as defined in section F below) for the benefit of Hudson Public School students.



| Hudson School Committee Policy | 1700 |
|---|---|

### B. Prohibited Written Materials

The following written materials shall be prohibited from distribution to students and posting in school buildings:

1. Materials that promote anything illegal or immoral and/or are otherwise pervasively indecent or vulgar, or create a disruption in the school environment..
2. Materials that, in any way, violate the policies of the Hudson School Committee, including the policy prohibiting discrimination on the basis of race, gender, ethnicity, sexual orientation, color, marital or parental status, religious orientation, national ancestry or origin.

### C. Approval of Written Materials for Students

1. Each school may distribute, post, or approve for posting appropriate written announcements of school-related events, school promotions, official publications, school newsletters, and parent newsletters (items Al through A4 above) solely upon the approval of the school principal.
2. The Superintendent or designee shall review all other materials not covered in item Cl for approval or denial. Please refer to section E below regarding submitting to the Superintendent or designee requests for the distribution and posting of written materials.

### D. Guidelines of Written Materials for Students

1. All written materials must be legible.
2. The content of all written materials must be appropriate for school-aged children.
3. Materials must clearly identify the group or groups responsible for organizing the event, activity or program. Discrete logos and symbols may be approved by way of identifying the group or organization.
4. All written materials must contain the statement "Any views or opinions expressed herein are not necessarily those of the Hudson Public Schools" in a conspicuous place in legible print.
5. The Superintendent or designee, at his/her discretion, may establish additional guidelines for written materials.

### E. Submitting Requests for Distribution and Posting of Written Materials for Students by Non-School Sponsored Groups

1. Any person, group, or organization wishing to distribute or post written materials in a specific Hudson public school must first submit for approval a copy of the written materials to the Superintendent's office **at least seven days in advance of the desired distribution or posting time**, together with the following information:
   a. Name, address, and telephone number of the person/group/organization submitting the request. Email address is optional.
   b. Date of requested distribution or posting.
   c. The grade(s) of students to whom the distribution or posting is intended.
2. The Superintendent or designee will review the request and render a decision. The person, group, or organization submitting the request shall be informed of the decision via written letter, telephone call, or email message.
3. Approved written materials must not be overly burdensome for distribution and must be bundled in packages of quantities as designated by each Hudson public school.

| Hudson School Committee Policy | 1700 |
|---|---|

4.    In the event that permission to distribute or post written materials is denied, the person, group, or organization may request reconsideration of the decision by the Superintendent or designee. The request for reconsideration must be in writing and must set forth the reasons why distribution is desirable and in the interest of the school community.  The Hudson School Committee may reconsider denials of the Superintendent or designee.

F. Definitions

Partner organizations of the Hudson Public Schools are private organizations that work in cooperation with Hudson Public Schools to deliver programming to Hudson students.  The Superintendent or designee shall have the authority to determine the criteria for new partnerships and evaluate possible partnership opportunities. The purpose of partnering with private organizations is to provide students enrichment programming in the fine arts, athletics, as well as other curriculum areas.  Partnerships and partnership programs shall be consistent with the mission of Hudson Public Schools.

Adopted by Hudson School Committee:  February 8, 2005
Amended by Hudson School Committee:  July 12, 2005

Marianne Vergano-Laughton
Secretary, Hudson School Committee

| Hudson School Committee Policy | 1701 |
|---|---|

## POSTERS ANNOUNCING MEETINGS OR EVENTS SPONSORED BY STUDENT GROUPS

Posters announcing meetings or events sponsored by student groups may be placed only in areas designated by the school administration. Prior to displaying any poster, the student group must have it initialed by an administrator indicating that it complies with this policy. The purpose of the posters is to identify the sponsoring student group and the dates, times and places of its meeting or events and, therefore, may not contain other material including website information. Posters must be appropriate for school-aged children and may not promote anything illegal or immoral, be pervasively indecent or vulgar, create a disruption in the school environment, or violate in any way the policies of the Hudson School Committee, including its policy prohibiting discrimination on the basis of race, gender, ethnicity, sexual orientation, color, marital or parental status, religious orientation, national ancestry or origin.

Adopted by Hudson School Committee:        July 12, 2005

Marianne Vergano-Laughton
Secretary, Hudson School Committee

Posters                                                                              Page 1 of 1

EXHIBIT
C