UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

DOCKET NO.: 05-11007 PBS

CHRISTOPHER BOWLER, HUDSON HIGH )
SCHOOL CONSERVATIVE CLUB, an )
unincorporated association, JOSEPH T. BOWLER, )
and KIMBERLY A. BOWLER, by and through )
her father and next friend, STEVEN BOWLER, )
    Plaintiffs, )

vs. )

JOHN STAPELFELD, DAVID CHAMPIGNY, )
DR. SHELDON BERMAN, TOWN OF HUDSON, )
MASSACHUSETTS and HUDSON HIGH )
SCHOOL, )
    Defendants. )

## AFFIDAVIT OF DAVID CHAMPIGNY

I, David Champigny, hereby depose and aver as follows:

1. I am the Assistant Principal of Hudson High School (hereinafter "HHS"), a position I have held since 2004.

2. On Tuesday, December 7, 2004, Ellen Schuck (hereinafter "Ms. Schuck"), the Technology Director of the Hudson Public Schools, came to my office to alert me of violent beheadings videos that were accessible from the website of the High School Conservative Club of America (hereinafter "HSCCA"). The HSCCA website address – http://www.hscaa.org – was listed on posters that were created by the Hudson High School Conservative Club (hereinafter "the Club") and posted throughout HHS.

3. Ms. Schuck came to my office immediately after watching one of the beheading videos.

|   |   |
|---|---|
|   | Still shaking and upset, Ms. Schuck told me that the video she had just watched on the HSCCA website was extremely violent and wholly inappropriate in a school setting. |
| 4. | Based on Ms. Schuck's description of and reaction to the video, HHS Principal John Stapelfeld (hereinafter "Mr. Stapelfeld") and I determined, on Tuesday, December 7, 2004, that the beheading videos, if viewed by HHS students, were reasonably likely to cause a substantial and material disruption at HHS. |
| 5. | Specifically, I believed that, as soon as one student watched one of the videos and word of their graphic and violent nature spread, many more students would likely watch the videos or at least talk about their contents. I also believed that those students who viewed the videos might reasonably request and/or require counseling in order to cope with subsequent feelings of helplessness or despair. |
| 6. | I reasonably forecast that the reactions of HHS students and teachers viewing the extremely violent videos on the HSCCA website would be strong enough to distract students from their school work. This belief was based, at least in part, on my communications with Ms. Schuck, and observations of how upset she sounded and appeared after viewing just one of the beheading videos. I also reasonably forecast that HHS teachers would be compelled or persuaded to interrupt their planned lessons or curricula, and turn classroom discussions into conversations regarding the videos, thereby disrupting normal classroom procedure and routine. |
| 7. | The violence on the videos was so shocking and graphic that I also concluded that, should the HSCCA website remain on the Club posters, it would impinge upon the rights of other students – particularly younger students – to be free from the potential |

psychological injury that watching the videos could cause.

8. I also reasonably forecast that at least some parents of HHS students would object to their children – particularly younger students – being exposed to the videos due to their extremely violent content.

9. At the direction of Mr. Stapelfeld, I met with Christopher and James on Tuesday, December 7, 2004, and informed them that, because of the violent and gruesome content of the beheading videos, the Club could not continue to list the HSCCA website on its posters.

10. I informed Christopher and James that HHS considered it inappropriate and potentially harmful to expose other students to the type of violence shown in the videos.

11. I did not tell Christopher and James that their Club could not meet, nor did I tell them that their Club had to sever all ties with the national HSCCA organization.

12. The posters were taken down on December 7, 2004.

13. On or about January 7, 2005, the Club posted new posters on the walls of HHS, at least some of which again listed the HSCCA website address.

14. Again at Mr. Stapelfeld's direction, Christopher was again called to my office on January 7, 2005, where I again advised him that the HSCCA website could not be posted on the Club's posters because of the violent beheading videos on that website.

15. During this meeting, I told Christopher that the Club could black out the HSCCA website address on the Club's posters and write the word "censored" over the HSCCA website address, which the Club did on several of its posters.

16. On or about February 3, 2005, the Hudson High School newspaper, "Hawk Talk," ran an

article that included the HSCCA website address.

17. I did not allow or give permission to any student or teacher associated with "Hawk Talk" to publish the HSCCA website address in the "Hawk Talk" article, nor did I read or review the "Hawk Talk" article before it was published.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 9 DAY OF APRIL, 2007.

_____
David Champigny