UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                  )
CHRISTOPHER BOWLER, et al.        )
        Plaintiffs,               )
                                  )
        v.                        )   CIVIL ACTION NO. 05-11007-PBS
                                  )
TOWN OF HUDSON, et al.            )
        Defendants.               )
                                  )
```

**MEMORANDUM AND ORDER**

December 18, 2007

Saris, U.S.D.J.

### I.  Introduction

Plaintiffs ask the Court to reconsider its allowance of defendants' motion for summary judgment with respect to the individual defendants' claims of qualified immunity.  Defendants oppose.  For the reasons stated below, plaintiffs' motion for reconsideration (Docket No. 59) is **ALLOWED-IN-PART** and **DENIED-IN-PART**.

### II. Factual Background

A full version of the undisputed facts are set forth in the Court's memorandum and order on defendants' motion for summary judgment.  See Bowler v. Town of Hudson, 514 F. Supp. 2d 168 (D. Mass. 2007).  Here the Court discusses facts pertinent to this motion.

Plaintiffs,[1] who are present or former students of Hudson

---

[1] Plaintiffs are Christopher, Joseph and Kimberly Bowler, by and through their father, Steven Bowler.  Plaintiff Christopher

High School ("HHS"), allege that defendants unlawfully censored their speech by taking down posters advertising the HHS Conservative Club (the "Club") on at least two separate occasions, all in violation of their First Amendment rights.[2] The posters listed the website address for a national organization of high school conservative clubs (the "HSCCA"), which in turn contained a link to another website hosting graphic video footage of hostage beheadings in Iraq and Afghanistan.  The link to the videos was accompanied by a warning.  Defendants assert that the posters were taken down because of the graphic content of the videos, while plaintiffs contend that the true reason was to censor the expression of their political views.

Along with the Town of Hudson and Hudson High School, plaintiffs sued principal John Stapelfeld; assistant principal David Champigny; and Dr. Sheldon Berman, superintendent of the Hudson Public School District.  Stapelfeld, Champigny, and Berman

---

Bowler has since graduated.  Plaintiffs also include the Hudson High School Conservative Club, an unincorporated association.

[2] Plaintiffs allege five counts in their Second Amended Complaint: (I) a violation of their First Amendment right of free expression; (III) a violation of the Equal Access Act, 20 U.S.C. § 4071; (IV) violations of their right to free expression under the Massachusetts Education Reform Act, M.G.L. c.71 § 82; (V) a violation of the right to equal protection under the Equal Protection Clause of the Fourteenth Amendment; and (VI) a violation of the plaintiffs' right to equal protection under Amendment CVI of the Massachusetts Constitution.  The parties filed a Stipulation of Dismissal as to Count II only, plaintiffs' claim under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I.

2

were sued in their individual and official capacities. Plaintiffs assert that, in taking down the Club's posters, Stapelfeld, Champigny, and Berman each discriminated against the conservative viewpoints of the Club.

**A.  Stapelfeld**

As to Principal Stapelfeld, plaintiffs point to a December 12, 2004, MetroWest Daily feature covering the dispute over the posters, in which Stapelfeld was quoted as saying, "What started out as a great idea drifted from true conservative values to reactionary." (Christopher Dep. Tr. Ex. 9).  However, in the same article, Stapelfeld stated that the dispute arose out of a misunderstanding, that in general the school's "measuring stick is whether (speech) is disruptive," and that "giving students more of a voice and discussion of civics, is what the school has been trying to promote." (Id.).

In their brief, plaintiffs also assert that Stapelfeld stated that the posters were removed because the Club was not "neutral on the issues."  (Opp. Mem. at 4, ¶ 13).  However, the evidence does not support this contention.  According to Christopher himself, Stapelfeld allegedly made this statement to Christopher at a meeting in which Christopher asked Stapelfeld for help in finding a sponsor for the Club.  (Christopher Dep. Tr. at 90).  Thus, Stapelfeld alleged made this statement before the posters were made and subsequently removed.  (Id. at 90-91)

Moreover, the undisputed facts also show that during this same meeting Stapelfeld also told Christopher that he was glad they were "getting involved politically." (Id. at 91). Stapelfeld subsequently assisted Christopher in finding a sponsor and getting the Club school recognition. (Id. at 89; Christopher Aff. ¶ 12).

**B.   Champigny**

As to Assistant Principal Champigny, plaintiffs contend that on December 7, 2006, the day the first set of posters were taken down, Christopher met with Champigny in his office and asked about the removal. According to plaintiffs, Champigny responded that the "HSCCA website promotes violence and is anti-gay." (Christopher Aff. ¶ 16). Mr. Champigny further told Christopher that though he "supported the Conservative Club," many of the teachers were offended by the content of the HSCCA website such as (1) calls to take down the rainbow (gay rights) flag and put up the American flag, (2) the website's support for the Second Amendment,(3) the inclusion of a "12-Step Liberal Recovery Program," and (4) its position in favor of abolishing the national education association ("NEA"). (Christopher Dep. Tr. at 62-63). Defendants dispute these contentions. (See Compl. & An. ¶ 3.13; Aff. of David Champigny ¶¶ 9-11 (describing encounter)).

**C.   Berman**

As to Superintendent Berman, plaintiffs point to a meeting

4

Berman had with Club members shortly after the publicity over taking down the posters started to get out of hand. Plaintiffs contend that during this meeting Berman stated that "the tone of some of the content of the HSCCA website was strident and problematic and that [the] Club could not include the website address of HSCCA on its posters and signs." (Christopher Aff. ¶ 25) (emphasis added). Defendants admit that the meeting took place, but do not address the statement Berman allegedly made. (Compl. & An. ¶ 3.24).

### III.  Discussion

**A. The Waiver Ruling**

Plaintiffs urge the Court to reconsider its ruling that plaintiffs, in effect, abandoned their grounds against the individual defendants' claims of qualified immunity with respect to viewpoint discrimination. See Bowler v. Town of Hudson, 514 F. Supp. 2d 168, 183 (D. Mass. 2007). To summarize, the individual defendants claimed qualified immunity for Counts I, III, and V, or all of plaintiffs' possible federal damage claims under 42 U.S.C. § 1983. (Def. Mem. at 23). The individual defendants asserted that they were entitled to qualified immunity because the undisputed facts showed that the law was unsettled as to the scope of the "significant discretion" afforded them under the First Amendment, and that the individual defendants otherwise acted reasonably in taking down "extremely violent and upsetting

videos." (Id. at 22-23). Plaintiffs insisted, however, that the First Amendment rights of the plaintiffs were clearly established and that "any reasonable school official would have known that Bethel did not support the censorship of the posters." (Opp. at 21). Plaintiffs failed to argue that the individual defendants were not entitled to qualified immunity because of their alleged viewpoint discrimination. The Court granted summary judgment as to the individual defendants' claims of qualified immunity, and considered plaintiffs' possible viewpoint discrimination argument waived, since "[a] party who aspires to oppose a summary judgment motion must spell out his arguments squarely and distinctly, or else forever hold his peace." Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) (emphasis added).

Plaintiffs concede that they "never specifically referred to defendants' viewpoint discrimination as a basis for denying their request that they be found qualifiedly immune," but argue that they did not have to because defendants never addressed plaintiffs' claims of viewpoint discrimination in the first place. (Mot. Recons. at 4-5). While plaintiffs should have explicitly raised this counterargument, the issue of viewpoint discrimination was raised in the complaint, briefing and oral argument. As such, the Court will entertain the plaintiffs' arguments against qualified immunity with respect to viewpoint discrimination.

6

The Court agrees that the First and Fourteenth Amendment's prohibition of viewpoint discrimination on the basis of political beliefs was clearly established at the time of the individual defendants' alleged conduct. See Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1282 (11th Cir. 2004) (on summary judgment, finding disputed issue of fact as to whether high school teacher and principal were entitled to qualified immunity as to alleged viewpoint discrimination, noting that "right to be free from viewpoint discrimination . . . was clearly established"). However, not all of the individual defendants are back on the hook for damages.

With respect to Champigny and Berman, the plaintiffs point to evidence in the record that the Club's posters were taken down on the basis of the conservative viewpoints of the HSCCA website linked to by the posters. Plaintiffs point to remarks made by Champigny to Christopher that the school took down the Club's posters because the "HSCCA website promotes violence and is anti-gay." (Christopher Aff. ¶ 16). Plaintiffs also point to a remark made by Berman at a meeting discussing the removal of the posters that "some of the content of the HSCCA website was strident and problematic." (Christopher Aff. ¶ 25). Such evidence is sufficient to establish a question of fact as to whether Champigny and Berman committed viewpoint discrimination in authorizing the removal of the posters.

Not so for Stapelfeld. The primary evidence plaintiffs

7

provide of Stapelfeld's viewpoint discrimination is a statement Stapelfeld made to a local newspaper.  Statements in a newspaper article are inadmissible hearsay evidence.  <u>Noviello v. City of Boston</u>, 398 F.3d 76, 84 (1st Cir. 2005) ("inadmissible hearsay . . . may not be considered on summary judgment.").  Even if these statements were admissible, they are insufficient to evince viewpoint discrimination when read in their totality.  Stapelfeld's own actions in supporting the Club show that Stapelfeld encouraged expression of the Club's viewpoints, but not the Club's link to the beheadings.

Moreover, while plaintiffs assert in conclusory fashion that Stapelfeld said that the posters were removed because the Club was not "neutral on the issues," this alleged statement is not sufficient to create a fact issue as to Stapelfeld's alleged viewpoint discrimination.  The chronology is impossible.  The undisputed facts show that Stapelfeld made the statement <u>before</u> the posters were removed, in the context of a meeting to get the Club a sponsor.  At the same meeting Stapelfeld stated that he was glad Christopher were "getting involved politically" and Stapelfeld subsequently provided assistance in getting the Club recognized.  Thus, plaintiffs point to no evidence in the record of Stapelfeld discriminating against the conservative views of the Club in removing their posters.  Accordingly, the Court finds that the undisputed facts support the qualified immunity of

defendant Stapelfeld as to all of plaintiffs' claims.

**B. Clearly Established Right**

Plaintiffs further argue that the court erred in ruling that First Amendment law under the Tinker-Fraser-Hazelwood-Morse line of cases was not clearly established as applied to the defendants' actions in this case. In particular, plaintiffs argue that the law clearly established that (1) under Tinker evidence of actual disruption was required to maintain censorship of the Club's posters and that (2) under Fraser school administrators cannot censor "patently offensive" speech that arises outside of the school. (Mot. Recons. at 6). It is this second contention that the Court considered a close call. Bowler, 514 F. Supp. 2d at 178-80. The speech at issue concerned a link to a website that contained another link to speech that was patently offensive. While the Court distinguished this case from Fraser and its progeny, the Court found the analysis difficult and challenging. Id. at 183 (noting "the Court's own difficulty in determining whether a First Amendment violation occurred in this case."). When a website link provided by a school club leads to patently offensive speech, it is unclear whether that patently offensive speech constitutes in-school speech, and no federal court at the time had addressed the issue squarely. Thus, the Court declines to reconsider its ruling that

First Amendment law under <u>Fraser</u> was not clearly established in this case.

**C. Damages Under State Law**

Defendants separately object to plaintiffs' notice of intent to press for damages under its state law claims, arguing that any finding of qualified immunity under federal law also applies under state law. (Opp. Recons. at 5 (citing <u>Duarte v. Healy</u>, 405 Mass. 43, 47-48 (1989)). The Court in <u>Duarte</u>, however, only equated qualified immunity under § 1983 to qualified immunity under the Massachusetts Civil Rights Act (the "MCRA"), M.G.L. c.12, § 11. <u>See</u> <u>Duarte</u>, 405 Mass. at 47-48. Plaintiffs have dismissed their claim under the MCRA, and their only remaining state law claims are for injunctive relief under the Massachusetts Education Reform Act, M.G.L. c.71, § 82, and for unspecified relief under Amendment CVI of the Massachusetts Constitution. Because it was unclear what relief plaintiffs sought under the Massachusetts Constitution, the Court asked the plaintiffs if they intended to seek damages under state law. Plaintiffs have subsequently notified the Court of their intent to do so. (Docket No. 58). The Court declines to consider whether the individual defendants are entitled to qualified immunity under plaintiffs' state constitutional law claim until the parties brief the issue more thoroughly.[3]

---

[3] The Court further notes that it is unclear under Massachusetts law whether the plaintiffs can recover damages

**ORDER**

For the reasons stated, the plaintiffs' motion for reconsideration (Docket No. 59) is **ALLOWED-IN-PART** and **DENIED-IN-PART**.

                                               S/PATTI B. SARIS
                                              United States District Judge

---

based upon a claim of a state constitutional violation <u>alone</u>. <u>See</u> <u>Martino v. Hogan</u>, 37 Mass. App. Ct. 710, 720 (1994) (noting that "[t]here has been discussion of grounding a cause of action on the State Constitution for violation of its provisions where no statutory avenue for enforcement has been fashioned and made available," but no conclusive decisions, noting the availability of § 1983 and the MCRA).