IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CHRISTOPHER BOWLER, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. **05 CV 11007 PBS** |
| JOHN STAPELFELD, et al. | ) ) ) | |
| Defendants. | ) ) | |

**JOINT PRETRIAL MEMORANDUM**

The parties in the above-captioned action hereby submit their Joint PreTrial Memorandum, pursuant to Local Rule 16.5(D), as follows:

**1.  Concise Summary of the Evidence.**

   **(a)  Plaintiffs.**

The Plaintiffs initiated a "Conservative Club" at Hudson High School (HHS), as an affiliate of a national organization called the High School Conservative Clubs of America (HSCCA). When the HHS Conservative Club placed posters in the school advertising its first meeting, it listed the HSCCA web site address, which contained links to beheadings as part of a large collection of conservative information and material. The school administration removed the posters, giving many other politically based reasons for their removal, along with the reason that the web site contained beheadings. It also prohibited any further display of the web address at the school. The plaintiffs also experienced a palpable bias and chilling of their speech in

classes, extracurricular activities, out-of-class discussions, and other school related activities.

**(b)** **<u>Defendants.</u>**

The evidence will show that Hudson High School ("HHS") administrators acted reasonably in prohibiting the Hudson High School Conservative Club ("the Club"), a non-curriculum related student organization, from listing an Internet domain name – "hssca.org" – on posters displayed on hallway walls throughout HHS. By doing so, defendants neither violated plaintiffs' constitutional rights to free speech and equal protection, nor violated any state or federal law. In December 2004 and January 2005, the home page of "hssca.org" contained links to five realtime, gruesome videos, in color and with sound, of terrorists beheading hostages ("the beheading videos").

On Friday, December 3, 2004, the Club posted approximately ten posters listing the Internet domain name of the organization with which it was loosely affiliated – "hssca.org" – in areas accessible to all HHS students, including 8th and 9th graders. On December 7, 2004, Ellen Schuck, the Hudson Public Schools Technology Director, visited the HSCCA website and watched one of the beheading videos. The video left Ms. Schuck extremely upset. Ms. Schuck immediately blocked access to "hssca.org" from all Hudson Public School computers. She then informed HHS Assistant Principal David Champigny of the graphic nature of the beheading video.

Based on Ms. Schuck's description and reaction to the beheading video, HHS Principal John Stapelfeld determined that the patently offensive beheading videos, if viewed by HHS students, were likely to cause a substantial and material disruption at HHS, could impinge upon the rights of other HHS students to be free from disturbing violent images, and were offensive. Thus, on Tuesday, December 7, 2004, at Principal Stapelfeld's instruction, Assistant Principal

Champigny removed the Club posters from the HHS walls, and advised plaintiff Christopher Bowler ("Chris"), along with James Melillo (co-founder of the Club), that the posters could not list the "hscca.org" Internet domain name because of the violent content of the beheadings videos. On or about January 7, 2005, the Club posted new posters on the walls of HHS, at least some of which again contained the "hscca.org" Internet domain name. On that same day, and again pursuant to instructions from Principal Stapelfeld, Assistant Principal Champigny informed Chris that the HSCCA website could not be shown on the Club's posters because of the violent beheadings videos.

      The evidence will show that HHS grants non-curriculum related student groups equal right to meet on school property outside of school hours, and also grants such groups equal access to school facilities for their activities. During the 2004-2005 academic school year, Chris formed the Club. Throughout the 2004-2005 academic year – the only period during which the Club existed – the Club was given the same access to school facilities as all other non-curriculum related student groups. The Club was not told when it could meet or how many meetings it could hold. The Club was provided with space to hold as many meetings as it wished and was allowed to host outside speakers (chosen solely by the Club) at its meetings. The Club's last meeting was held almost three years ago, on April 13, 2005. The Club remains inactive today. None of the plaintiffs, nor any Club member, was ever punished or disciplined in any way for posting the "hscca.org" Internet domain name on Club posters or for any other matter related to the activities of the Club.

      At no time – either before or after the posting of the "hscca.org" Internet domain name – did the defendants engage in viewpoint discrimination of any kind against plaintiffs or any member of the Club, or treat plaintiffs or any member of the Club differently from other HHS

students, based on their political beliefs or viewpoints.  To the contrary, the evidence will show that Principal Stapelfeld and Superintendent Berman expressly encouraged and applauded Chris for starting the Club.  Additionally, Principal Stapelfeld helped Chris find a sponsor for the Club.  At no time did the defendants have knowledge of or allow a politically biased environment to exist at HHS.

The evidence will show that it is now impossible for plaintiffs to obtain the equitable relief they seek – in the form of an order compelling defendants to permit the Club to list the "hssca.org" Internet domain name on their posters – because Internet domain name expired on February 5, 2008 and, thus, is no longer in existence.

**2.    Facts Established by Pleadings, Stipulations or Admissions.**

1.  The plaintiff, Christopher Bowler, along with fellow student James Melillo, established the Hudson High School Conservative Club ("the Club") in the Fall of 2004.  At that time, both Christopher and James were students at Hudson High School, located in Hudson, Massachusetts.

2.  The Club was loosely affiliated with a national organization called the High School Conservative Clubs of America ("HSCCA").

3.  Hudson High School is a public secondary school for students attending grades eight through twelve.  Students enrolled at Hudson High School range from ages twelve to eighteen.

4.  In December 2004, the Club hung posters in the hallways of Hudson High School advertising their first meeting and listing the HSCCA Internet domain name, "hssca.org."

3. **Contested Issues of Fact.**

   (a) **Plaintiffs.**

     1. Whether the placement of the HSSCA website address, containing links to beheadings by Islamist terrorists, caused disruption at Hudson High School.

     2. Whether the defendants and their agents showed intolerance of the political viewpoints of the plaintiffs in class and at Conservative Club meetings.

   (b) **Defendants.**

     1. Whether plaintiffs engaged in speech or conduct protected under the First Amendment.

     2. Whether the Internet domain name "hssca.org" is a part of a communicative message.

     3. Whether defendants' conduct, in requiring the Club to remove an Internet domain name – "hscca.org" – with hyperlinks to graphic beheading videos from ten posters posted on the walls of HHS, violated plaintiffs' rights of free speech as guaranteed under the First Amendment to the United States Constitution.

     4. Whether defendants' justifications for restricting plaintiffs' alleged speech satisfy the requisite standards.

     5. Whether the defendants reasonably forecast that displaying an Internet domain name with hyperlinks to graphic beheading videos on posters posted on the walls of HHS was likely to materially disrupt the educational environment at HHS, precipitate substantial disorder or involve an invasion of the rights of others.

     6. Whether the graphic beheading videos constitute plainly offensive speech.

     7. Whether the graphic beheading videos constitute vulgar speech.

8. Whether, compared with others similarly situated, the plaintiffs were selectively treated by the defendants based on plaintiffs' political viewpoints or beliefs.

9. If plaintiffs were selectively treated by the defendants based on their political viewpoints or beliefs, whether the defendants acted with discriminatory intent.

10. If plaintiffs were selectively treated by the defendants based on their political viewpoints or beliefs, and if defendants acted with discriminatory intent, whether defendants had a compelling state interest in restricting plaintiffs' speech.

11. Whether the defendants denied plaintiffs equal access to conduct a Club meeting, on the basis of the political content of the speech at such meetings.

12. Whether the posting of the posters on the walls of HHS constitutes a "meeting" within the Equal Access Act.

13. Whether the Club's posters, containing the Internet domain name "hscca.org," could create a genuine safety concern, interrupt or interfere with the teaching of curriculum, or materially and substantially interfere with the orderly conduct of educational activities within HHS.

14. Whether defendants' conduct in requiring plaintiffs to remove the Internet domain name "hscca.org" from Club's posters was done for the purposes of maintaining order and discipline on school premises.

15. Whether defendants' conduct in requiring plaintiffs to remove the Internet domain name "hscca.org" from Club's posters was done for the purposes of protecting the well-bring of students and faculty.

16. Whether defendants' conduct in requiring plaintiffs to remove the Internet domain name "hscca.org" from Club's posters was done for the purposes of assuring that

student attendance at meetings was voluntary.

17. Whether the individual defendants, David Champigny and Dr. Sheldon Berman's actions were reasonable in light of clearly established law and the information the defendants possessed at the time of their allegedly unlawful conduct.

18. Whether a reasonable official, similarly situated to the individual defendants, David Champigny and Dr. Sheldon Berman, would have understood that the challenged action violated plaintiffs' constitutional rights.

19. Whether the defendants could reasonably forecast that the beheading videos would cause at least some disruption or disorder within HHS.

20. Whether the policymaker, the Hudson School Committee, violated plaintiffs' constitutional rights by means of a policy, custom or practice.

21. Whether the policymaker, the Hudson School Committee, ratified John Stapelfeld's decision to censor the Club posters.

22. 22.  Whether, at the time the Club posters were hung, a heading near the top of the "hscca.org" home page read "Islam: A Religion of Peace?" together with a warning.

23. Whether below the heading was a still shot from one of five realtime videos of beheadings, which were directly accessible from the "hssca.org" home page through hyperlinks.

24. Whether the heading, warning, still shot and five beheading videos were accessible directly from the HSCCA website from at least December 6, 2004 until February 5, 2008.

25. Whether the Internet domain name "hssca.org' expired on February 5, 2008, and is

no longer in existence

**4.     Jurisdictional Questions.**

None.

**5.     Questions Raised by Pending Motions.**

   **(a)     Plaintiffs.**

   None, other than those raised in plaintiffs' motion *in limine* to be filed.

   **(b)     Defendants.**

   None, other than those raised in defendants' Motion in Limine to be separately filed.

**6.     Issues of Law, Evidentiary Questions, and Supporting Authority.**

   **(a)     Plaintiffs.**

   None.

   **(b)     Defendants.**

   The remedies pled in plaintiffs' Second Amended Complaint, as well as the Memoranda and Orders issued by the Court on defendants' Motion for Summary Judgment, raise various issues of law, several of which are addressed in defendants' Motion in Limine to Decide Issues of Law to be filed separately. Those issues include:

   i)     The scope of the qualified immunity protection shielding the individual defendants, John Stapelfeld, David Champigny and Dr. Sheldon Berman;

   ii)     The lack of a legal remedy under which plaintiffs may recover for defendants' alleged violation of the Massachusetts Constitution, Amendment CVI;

    iii)    Whether plaintiffs lack Article III standing to seek equitable relief in light of the fact that the "hscca.org" website no longer exists;

    iv)    Whether plaintiffs' demands for equitable relief are now rendered moot in light of the fact that the "hscca.org" website no longer exists;

    v)    Whether the defendant, Hudson High School, is a separate legal entity subject to suit;

    vi)    Whether the Hudson School Committee is the policymaking authority for the defendant, Town of Hudson, purposes of <u>Monell</u> liability;

    vii)    Whether the Internet domain name "hscca.org" qualifies as constitutionally protected speech under the First Amendment;

    viii)    Whether the law regarding the constitutional protection of an Internet domain name was "clearly established" at the time of defendants' actions.

**7.** **Requested Amendments to the Pleadings.**

None.

**8.** **Additional Matters to Aid in the Disposition of the Action.**

None.

**9.** **Probable Length of Trial.**

Two to three full days or five to six half-days.

**10.** **Witnesses.**

**(a)** **Plaintiffs.**

1.    Christopher Bowler, 2 Abigail Drive, Hudson, MA 01749; (978) 562-8662.

2.    Joseph T. Bowler, Same as above.

3.    Kimberly A. Bowler, Same as above.

4. Stephen Bowler, Same as above.

5. James Mellilo - 26 Almont Avenue, Worcester, MA 01604; (978) 568-1834;

6. Steven Sacco, Hudson High School, 69 Brigham Street, Hudson MA;

7. Kathy Somerville, Hudson High School, 69 Brigham Street, Hudson, MA;

8. Michael Forrest,                                        Springfield, MA

**(b)  Defendants.**

1. John Stapelfeld, Hudson High School, 69 Brigham Street, Hudson, MA 01749;

2. David Champigny, Hudson High School, 69 Brigham Street, Hudson, MA 01749;

3. Dr. Sheldon Berman, VanHoose Education Center, 3332 Newburg Road, Louisville, Kentucky 40218;

4. Brian Daniels, Hudson High School, 69 Brigham Street, Hudson, MA 01749;

5. Ellen Schuck, Hudson High School, 69 Brigham Street, Hudson, MA 01749;

6. Gail LaMere, Hudson High School, 69 Brigham Street, Hudson, MA 01749;

7. Kathy Somerville, Hudson High School, 69 Brigham Street, Hudson, MA 01749;

8. James Melillo, 26 Almont Avenue, Worcester, MA 01604;

9. Gerald Lewis, Ph.D., President, Gerald Lewis, Ph.D. & Assoc., P.C., 1290 Worcester Road, Framingham, MA 01702;

10. Paul Chagnon, 45 Longfellow Road, Northborough, MA 01532;

11. Don Martin, 8 Calvins Lane, Sterling, MA 01564;

12. Steven Sacco, Hudson High School, 69 Brigham Street, Hudson, MA 01749;

13. Beth Ferns, Hudson High School, 69 Brigham Street, Hudson, MA 01749;

14. Susan Menanson, Hudson High School, 69 Brigham Street, Hudson, MA 01749;

    15.    Julie Snyder, Hudson High School, 69 Brigham Street, Hudson, MA 01749;

    16.    Todd Wallingford, Hudson High School, 69 Brigham Street, Hudson, MA 01749;

    17.    Tom Bousnakis; and

    18.    Phyllis Kutt.

**11.　Exhibits.**

    **(a)　Plaintiffs.**

        1.    MetroWest News article, December 12, 2004;

        2.    Handout entitled "Conservative Club";

        3.    Photograph of HHSCC publicity poster;

        4.    Champigny Letter to Bowler, January 7, 2005;

        5.    *Hawk Talk* article by Samantha Chipman;

        6.    Handout entitled, "Welcome to the Newly Formed Conservative Club" dated December 9, 2004;

        7.    Hudson School Committee Policy 1700; and

        8.    Hudson School Committee Policy 1701.

    **(b)　Defendants.**

        1.    Letter from David Champigny to Christopher Bowler, January 7, 2005;

        2.    Hand-out entitled, "Statistics and Information About Homosexuality," March 5, 2005;

        3.    Portion of High School Conservative Clubs of America (HSCCA) internet domain name, home page, found at www.hscca.org, January 7, 2005;

        4.    A CD containing three videos downloaded from www.hscca.org, and

several still shots and images taken from the three videos;

5. Email correspondence from Christopher Bowler to Tim Bueler, December 7, 2004;

6. Hudson High School Conservative Club announcement, December 9, 2004;

7. Hudson High School Conservative Club bulletin regarding Club goals, undated;

8. Hudson High School Conservative Club bulletin regarding open debate, undated;

9. Reading Overview, written by Christopher Bowler, undated;

10. Reflecting on Teachers, written by Christopher Bowler, undated;

11. Listening, written by Christopher Bowler, undated;

12. Speaking, written by Christopher Bowler, undated;

13. Academic transcript of Christopher Bowler; and

14. Expert Opinion of Gerald Lewis, Ph.D.

15. The American People, Creating a Nation and a Society, Fifth Edition, Gary B. Nash and Julie Roy Jeffrey, Editors;

16. Hudson School Committee policy 8200;

17. Hudson School Committee policy 8201;

18. Hudson School Committee policy 8202;

19. Hudson School Committee policy 8203; and

20. Hudson School Committee policy 8204.

**12.   Objections to Evidence.**

    **(a)   Plaintiffs.**

Plaintiff will file a motion *in limine*, requesting that Defendant's proposed expert witness, Gerald Lewis, Ph.D., should not testify. No child at the school complained about any negative effects from viewing the web site in question and no disruption was alleged at HHS from any actions of the plaintiffs or due to the HSCCA web site was alleged. Thus, the testimony should be excluded under Fed.R.Ev. 702, as the expert's testimony: a) will only speculate about what *could* happen, but did not happen, and thus cannot apply scientific principles to the facts of this case; b) is not needed to explain any "scientific, technical, or other specialized knowledge" that will assist the trier of fact to understand the evidence;

    **(b)   Defendants.**

Pursuant to Fed. R. Civ. P. 26(a)(3) and this Court's Pretrial Order, the defendants filed their Pretrial Disclosures on February 19, 2008. To date, plaintiffs have not filed their mandatory Pretrial Disclosures. In addition to defendants' separately filed Motions *in Limine*, the defendants object to plaintiffs' introduction of the "*Hawk Talk* article by Samantha Chipman," the "MetroWest News article, December 12, 2004," and the "Photograph of HHSCC publicity poster."

Both newspaper articles are offered to prove the truth of the matters asserted, constitute inadmissible hearsay under Fed. R. Evid. 802, and inadmissible hearsay within hearsay under Fed. R. Evid. 805. In the context of summary judgment, the Court itself noted that, "statements in a newspaper article are inadmissible hearsay evidence." See December 18, 2007 Memorandum and Order, p. 8, quoting Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005).

As for the photograph, plaintiffs never disclosed or produced this document in their Initial Disclosures under Fed. R. Civ. P. 26(a)(1), or in response to defendants' written discovery requests.  Nor did plaintiffs ever supplement their disclosures or responses to proved defendants with this document. Fed. R. Civ. P. 37(c)(1) states, in relevant part, that:

> A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness or information not disclosed.

Fed. R. Civ. P. 37(c)(1).  "The required sanction in the ordinary case [for failure to make disclosure under Fed. R. Civ. P. 26(a)] is mandatory preclusion." Klonski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998).  Plaintiffs can demonstrate no "substantial justification" for failing to disclose the document.  Further, defendants have never seen the photograph and, in fact, did not know of its existence until receipt of plaintiffs' draft of this memorandum.  Plaintiffs' failure to timely disclose the photograph that they intend to offer as evidence at trial has prejudiced the defendants in their trial preparation.  Neither defense counsel nor defendants' witnesses can fully and adequately prepare for trial without knowing precisely what evidence plaintiffs intend to offer in support of their various claims.  As such, plaintiffs' failure to disclose the photograph has harmed the defendants.  Thus, plaintiffs should be precluded from introducing the photograph into evidence at trial.

For Plaintiffs,                                             For Defendants,


/s/ Gregory A. Hession                                      /s/ John J. Davis

Gregory A. Hession, J.D.                                    John J. Davis Esq.  BBO No. 115890
172 Thompson Street.                                        Mia B. Friedman, Esq.  BBO No. 663826
Springfield, MA  01109                                      Pierce, Davis & Perritano, LLP
(413) 746-3333                                              Ten Winthrop Square
BBO. No. 564457                                             Boston, MA  02110

(617) 350-0950

Participating Attorney for
The Rutherford Institute

John W. Whitehead, Esq.
Douglas R. McKusick, Esq.
THE RUTHERFORD INSTITUTE
1440 Sachem Place
Charlottesville, Virginia 22901
(434) 978-3888
Fax: (434) 978-1789

Dated: February 27, 2008