# **<u>Jury Instructions</u>**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

DOCKET NO.: 05-11007 PBS

_____
                                                      )
CHRISTOPHER BOWLER, HUDSON HIGH         )
SCHOOL CONSERVATIVE CLUB, an                )
unincorporated association, JOSEPH T. BOWLER, )
and KIMBERLY A. BOWLER, by and through    )
her father and next friend, STEVEN BOWLER,    )
     Plaintiffs,                                      )
                                                      )
vs.                                                   )
                                                      )
JOHN STAPELFELD, DAVID CHAMPIGNY,       )
DR. SHELDON BERMAN, TOWN OF HUDSON, )
MASSACHUSETTS and HUDSON HIGH           )
SCHOOL,                                            )
     Defendants.                                     )
_____)

## **DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

     The defendants, John Stapelfeld, David Champigny, Dr. Sheldon Berman, Town of

Hudson, Massachusetts, and Hudson High School, pursuant to Rule 51 of the Federal Rules of

Civil Procedure, respectfully submit the following proposed requests for instructions to the jury:

NO. 1

**Burden of Proof**

In a civil action such as this one, the burden of proof is upon the plaintiffs to prove each and every essential element of each of their claims by a preponderance of the credible evidence. In this case, the plaintiffs have five separate claims. If the plaintiffs fail to prove any one of the essential elements of a claim by a preponderance of the credible evidence, or if the credible evidence is equally balanced as to any of the essential elements of a claim, then you must find for the defendants on that claim.

Storlazzi v. Bakey, 894 F. Supp. 494, 500 (D. Mass. 1995);
White v. Vathally, 570 F. Supp. 1431, 1433 (D. Mass. 1983).

NO. 2

    To establish a fact by "a preponderance of the evidence" means to prove that something is more likely to exist than not.  If the evidence is equally balanced as to any of the essential elements of a claim, you must find for the defendants with respect to that claim.

    <u>Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust for So. Cal.</u>, 508 U.S. 602, 622 (1993).

NO. 3

**Burden of Proof – 42 U.S.C. § 1983**

The burden of proof is on the plaintiffs in a Section 1983 civil rights action, such as this one, to prove by a preponderance of the credible evidence that they were deprived of particular rights, as explained in later instructions, secured by the United States Constitution and/or the laws of the United States, by a person acting under the color of state law.

West v. Atkins, 487 U.S. 42, 48 (1988);

Tatro v. Kervin, 41 F.3d 9, 14 (1st Cir. 1994), citing Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991).

NO. 4

**Burden of Proof – 42 U.S.C. § 1983**

The plaintiffs allege that the defendants, through their conduct, deprived plaintiffs of particular rights secured under the United States Constitution and/or laws of the United States. In order to establish this, the plaintiffs must prove that the defendants' actions were both the cause in fact and the proximate cause of the plaintiffs' alleged damages. In other words, the plaintiffs must prove by a preponderance of the credible evidence that defendants' acts were so closely related to the deprivation of the plaintiffs' rights as to be the moving force that caused the ultimate damages.

Richardson v. Leeds Police Dept., 71 F.3d 801, 805 (11th Cir. 1995);
Oviatt v. Pearce, 954 F.2d 1470, 1481 (9th Cir. 1992).

NO. 5

**Burden of Proof – 42 U.S.C. § 1983**

This case involves claims brought under a federal civil rights law, 42 U.S.C. § 1983. Section 1983 provides a remedy for individuals who have been deprived of federal constitutional or statutory rights by a person or entity acting under color of state law.  In pertinent part, Section 1983 states as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the person injured . . ..

42 U.S.C. § 1983;
Iacobucci v. Boulter, 193 F.3d 14, 21 (1st Cir. 1994).

NO. 6

**Burden of Proof – Municipal Liability**

The defendants, Town of Hudson and Hudson High School, are municipal entities; they are not individuals. A municipality cannot be held vicariously liable for the civil rights violations (if any) of its agents or employees. Therefore, in order to prevail against the defendants, Town of Hudson and Hudson High School, the plaintiffs must prove by a preponderance of the credible evidence that (1) agents or employees of the Town or School deprived them of particular rights under the United States Constitution and/or the laws of the United States; (2) through an official governmental policy, practice or custom.

Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658, 665 (1978);
St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988);
Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005).

NO. 7

**Burden of Proof – Municipal Liability**

Where a Section 1983 plaintiff claims that a municipality has not directly inflicted an injury but instead has caused its employee to do so, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Board of County Comm'rs of Bryan County, Ok. v. Brown, 520 U.S. 397, 405 (1997). This is particularly so where the plaintiff makes no allegation that the municipality itself violated federal law or directed or authorized the deprivation of his civil rights. "That a plaintiff suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation . . . ." Id., 520 U.S. at 406.

NO. 8

**Burden of Proof – Municipal Liability**

"Official policy" means a rule or regulation promulgated, adopted or ratified by a municipality.  "Practice or custom" means any permanent, widespread, well-settled practice or custom that constitutes a standard operating procedure of a municipality.  Thus, in the absence of an official policy, the plaintiffs may prevail against the defendants, Town of Hudson and Hudson High School, upon proof that agents or employees of the Town or School acted in accordance with a custom or practice that is "so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."

Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir.), cert. den., 110 S. Ct. 75 (1989).

NO. 9

**Burden of Proof – Municipal Liability**

Alternatively, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality." <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988).  But if authorized policymakers  "[s]imply go[ ] along with" a subordinate's decision, such acquiescence is not enough to impose liability upon the municipality.  The violation of plaintiffs' constitutional rights must be causally traceable to the policymaking authority, not just to its subordinates.

<u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 130 (1988);
<u>Milam v. City of San Antonio</u>, 113 Fed. Appx. 622, 627 (5th Cir. 2004).

NO. 10

**Claims Under 42 U.S.C. § 1983**

In any case brought under Section 1983 alleging a denial of a constitutional right, the first inquiry must be, "whether the plaintiff has been deprived of a right 'secured by the constitution and laws' of the United States." <u>Willhauck v. Halpin</u>, 953 F.2d 689, 703 (1st Cir. 1991); <u>Baker v. McCollan</u>, 443 U.S. 137 (1979). The plaintiffs contend that their rights to free speech as protected under the First Amendment, as well as their rights to equal protection of the laws as protected under the Fourteenth Amendment, have been violated by the defendants. Both rights are explained in turn.

NO. 11

## Claims Under 42 U.S.C. § 1983

A mere violation of state law cannot support a claim for recovery under Section 1983.

Roy v. City of Augusta, Maine, 712 F.2d 1517, 1522 (1st Cir. 1983);
Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833, cert. den., 459 U.S. 989 (1982).

NO. 12

## Claims Under 42 U.S.C. § 1983 – Free Speech

In this case, the plaintiffs allege that the defendants' conduct, in requiring the Hudson High School Conservative Club to remove an internet domain name – "www.hscca.org" – with hyperlinks to beheading videos from ten posters posted on the walls of Hudson High School, violated their rights of freedom of speech and freedom of expression as guaranteed under the First Amendment to the United States Constitution.

NO. 13

## Claims Under 42 U.S.C. § 1983 – Free Speech

Under the First Amendment, a private citizen has the right to free speech and free expression.  In order to prove the defendants deprived the plaintiffs of their rights under the First Amendment, plaintiffs must ordinarily prove: (1) that the plaintiffs engaged in speech or conduct protected under the First Amendment; (2) the nature of the forum: public, designated or limited public, or nonpublic; and (3) that the defendants' justifications for limiting the plaintiffs' speech do not satisfy the requisite standard.

Cornelius v. NAACP Legal Defense & Education Fund, 473 U.S. 788, 797 (1985).

NO. 14

**Claims Under 42 U.S.C. § 1983 – Free Speech**

The First Amendment protects not only the expression of ideas through printed and spoken words, but also symbolic speech or conduct "sufficiently imbued with elements of communication . . .." <u>Spence v. State of Washington</u>, 418 U.S. 405, 409 (1974); <u>Roulette v. City of Seattle</u>, 97 F.3d 300, 302-303 (9th Cir. 1996). Excluded from First Amendment protection are symbolic communications or conduct that is not "inherently expressive." <u>Rumsfeld v. Forum for Academic & Institutional Rights, Inc.</u>, 547 U.S. 47, 64 (2006). And, while "[i]t is possible to find some kernel of expression in almost every activity a person undertakes[,] . . . such a kernel is not sufficient to bring the activity within the protection of the First Amendment." <u>City of Dallas v. Stanglin</u>, 490 U.S. 19, 25 (1989).

NO. 15

**Internet Domain Names as Free Speech**

Although domain names may constitute expressive speech, they "are neither automatically entitled to nor excluded from the protections of the First Amendment . . .."

Sunlight Saunas, Inc. v. Sundance Sauna, Inc., 427 F. Supp. 2d 1032, 1057 (D. Kan. 2006).

NO. 16

**Internet Domain Names as Free Speech**

In determining whether an internet domain name such as "hscca.org" is entitled to First Amendment protection, "the appropriate inquiry is one that fully addresses particular circumstances presented with respect to each name." This inquiry requires a "particularistic, content-sensitive analysis . . . including analyses of the domain name itself, the way the domain name is being used, the motivations of the author of the website in question, [and] the contents of the website."

Name.Space, Inc. v. Network Solutions, Inc., 202 F.3d 573, 585-86 (2nd Cir. 2000).

NO. 17

**Internet Domain Names as Free Speech**

Whether a particular domain name is protected by the First Amendment depends on the extent of its communicative message, if any.

Name.Space, Inc. v. Network Solutions, Inc., 202 F.3d 573, 585 (2nd Cir. 2000)..

NO. 18

**Internet Domain Names as Free Speech**

Domain names that are not a part of a communicative message do not enjoy the protection of the First Amendment. <u>See</u>, <u>e.g.</u>, <u>Planned Parenthood Federation of America, Inc. v. Bucci</u>, 1997 WL 133313, * 11-12 (S.D.N.Y.) ("plannedparenthood.com" held not entitled to First Amendment protection); <u>OBH, Inc. v. Spotlight Magazine, Inc.</u>, 86 F.Supp.2d 176, 197-198 (W.D.N.Y. 2000) ("the buffalonews.com" held not entitled to First Amendment protection); <u>Jews for Jesus v. Brodsky</u>, 993 F.Supp.2d 282, 287, n. 1 (D. N.J. 1998) (dispute over use of "jewsforjesus.org" does not implicate rights granted by the First Amendment); <u>c.f.</u>, <u>Bally Total Fitness Holding Corp. v. Faber</u>, 29 F.Supp.2d 1161, 1167-1168 (C.D.Cal. 1998) ("www.compupix.com/ballysucks" constitutes protected speech because it was used in context of commentary meant to communicate dissatisfaction with Bally).

NO. 19

**Internet Domain Names as Free Speech**

If you determine that the alphanumeric sequence used in the domain name "hscca.org" is not a part of a communicative message, then you must find that it is not entitled to First Amendment protection.

NO. 20

**Curriculum in Public School**

In the United States, public education "is committed to the control of state and local authorities." Epperson v. Arkansas, 393 U.S. 97, 104 (1968); Goss v. Lopez, 419 U.S. 565, 578 (1975); Curtis v. School Comm. of Falmouth, 420 Mass. 749, 754, 652 N.E.2d 580, 584 (1995). Indeed, public education "is perhaps the most important function of state and local governments." Brown v. Bd. of Ed. of Topeka, 347 U.S. 483, 493 (1954). Hand-in-hand with that control comes the "undoubted right to prescribe the curriculum for . . . public schools." Epperson, 393 U.S. at 107. Thus, the Supreme Court "has long recognized that local school boards have broad discretion in the management of school affairs." Board of Ed., Island Trees Union Free School Dist. No. 26 v. Pico, 457 U.S. 853, 863 (1982). See Grove v. Mead School Dist. No. 354, 753 F.2d 1528, 1533-34 (9th Cir. 1985).

NO. 21

**Curriculum in Public School**

"Public schools often walk a tightrope between the many competing constitutional demands made by parents, students, teachers, and the schools' other constituents." <u>Parker v. Hurley</u>, 2008 WL 250375, *15 (1st Cir. 2008). However, a school's choice of teaching materials, even those deeply offensive to plaintiffs' beliefs, does not entitle plaintiffs to relief under the United States Constitution. <u>Id.</u>

NO. 22

**Claims Under 42 U.S.C. § 1983 – Free Speech in Public School**

The protection of speech of public school students, such as the plaintiffs, is not unlimited. Students' rights to free speech are not coextensive with those of adults. Bethel School Dist. No. 403 v. Fraser, 478 U.S. 675, 682 (1986).  Thus, students' First Amendment rights are to be applied "in light of the special characteristics of the school environment." Tinker v. Des Moines Ind. Community School Dist., 393 U.S. 503, 506 (1969).

NO. 23

**Claims Under 42 U.S.C. § 1983 – Free Speech in Public School**

Public school officials, such as the individual defendants, have the authority to limit, restrict or punish three types of speech without violating students' First Amendment rights. Two of those types of speech are relevant to this case. First, a school may restrict non-school sponsored speech – the type of speech at issue in this case – which causes a substantial disruption of or material interference with the requirements of appropriate discipline in the operation of the school, or impinges on the rights of other students.

Tinker v. Des Moines Ind. Community School Dist., 393 U.S. 503, 513 (1969).

NO. 24

**Claims Under 42 U.S.C. § 1983 – Free Speech in Public School**

The defendants' conduct was justified, and did not infringe on the plaintiffs' First Amendment rights, if the defendants reasonably concluded that displaying an internet domain name with hyperlinks to beheading videos on ten posters posted on the walls of Hudson High School "was likely to 'materially disrupt' the educational environment at Hudson High School, precipitate 'substantial disorder,' or involve an 'invasion of the rights of others.'"

---

Governor Wentworth Regional School Dist. v. Hendrickson, 421 F.Supp.2d 410, 420 (D. N.H. 2006), quoting Tinker v. Des Moines Ind. Community School Dist., 393 U.S. 503, 513 (1969).

NO. 25

**Claims Under 42 U.S.C. § 1983 – Free Speech in Public School**

"Concerns regarding disorder or disruption are 'reasonable' if those charged with maintaining order and viable educational environment can point to specific facts 'which might reasonably have led [them] to forecast substantial disruption of or material interference with school activities.'"

      Governor Wentworth Regional School Dist. v. Hendrickson, 421 F.Supp.2d 410, 420 (D. N.H. 2006), quoting Tinker v. Des Moines Ind. Community School Dist., 393 U.S. 503, 513 (1969);
Saxe v. State College Area School Dist., 240 F.3d 200, 212 (3rd Cir. 2001);
Boroff v. Van Wert City Bd. of Ed., 220 F.3d 465, 470 (6th Cir. 2000).

NO. 26

**Claims Under 42 U.S.C. § 1983 – Free Speech in Public School**

School officials need not wait until after incidents of disruption occur before taking appropriate action; in fact, they are obligated to take reasonable measures to prevent incidents and diffuse existing tensions whenever possible.

Governor Wentworth Regional School Dist. v. Hendrickson, 421 F.Supp.2d 410, 421 (D. N.H. 2006);
West v. Derby Unified School Dist. No. 260, 206 F.3d 1358, 1366 (10th Cir. 2000).

NO. 27

**Claims Under 42 U.S.C. § 1983 – Free Speech in Public School**

The reasonableness of a forecast made by school officials, to the effect that certain student speech may cause a substantial disruption of or material interference with school operations, is measured as of the time of the alleged censorship.

LaVine v. Blaine School Dist., 257 F.3d 981, 992 (9th Cir. 2001);
Demers v. Leominster School Dept., 263 F. Supp. 2d 195, 202 (D. Mass. 2003).

NO. 28

**Claims Under 42 U.S.C. § 1983 – Free Speech in Public School**

"The First Amendment does not deprive school administrators, such as the individual defendants, of the ability to rely upon their own considerable experience, expertise, and judgment in recognizing and diffusing the potential for disruption . . . in public schools."

Governor Wentworth Regional School Dist. v. Hendrickson, 421 F.Supp.2d 410, 423 (D. N.H. 2006).

NO. 29

**Claims Under 42 U.S.C. § 1983 – Free Speech in Public School**

School officials may also regulate student speech that impinges upon – or may impinge upon – the rights of other students, without violating students' First Amendment rights. <u>Tinker v. Des Moines Ind. Community School Dist.</u>, 393 U.S. 503, 513 (1969).  The rights of other students include the right to be free from psychological injury. <u>West v. Derby Unified School Dist. No. 260</u>, 206 F.3d 1358, 1366 (10th Cir. 2000).

NO. 30

## Claims Under 42 U.S.C. § 1983 – Free Speech in Public School

A second type of student speech that school officials may restrict or punish is speech that is plainly offensive and inappropriate for school children, as schools have an interest in teaching students the boundaries of socially appropriate behavior.

Bethel School Dist. No. 403 v. Fraser, 478 U.S. 675, 682-683 (1986).

NO. 31

**Claims Under 42 U.S.C. § 1983 – Free Speech in Public School**

The primary consideration in determining whether speech is inappropriate is the manner in which it is conveyed, and not the actual content of the speech.

Nixon v. Northern Local School Dist. Bd. of Ed., 383 F.Supp.2d 965, 971 (S.D. Ohio 2005), citing Castorina v. Madison County School Bd., 246 F.3d 536, 542 (6th Cir. 2001).

NO. 32

**Claims Under 42 U.S.C. § 1983 – Free Speech in Public School**

Public schools are entitled to prohibit plainly offensive speech even where there is no substantial disruption or material inference in the school's operations.

Pyle v. South Hadley School Comm., 861 F.Supp. 157, 168 (D. Mass. 1994);
Boroff v. Van Wert City Bd. of Ed., 220 F.3d 465, 470 (6th Cir. 2000);
Barber v. Dearborn Pub. Schools, 286 F. Supp.2d 847, 856 (E.D. Mich. 2003);
Broussard v. School Bd. of City of Norfolk, 801 F.Supp. 1526, 1536 (E.D. Va. 1992);
Gano v. School Dist. No. 411 of Twin Falls County, State of Id., 674 F.Supp. 796, 798-799 (D. Id. 1987);
Scott v. School Bd. of Alachua County, 324 F.3d 1246, 1249 (11th Cir. 2003).

NO. 33

**Claims Under 42 U.S.C. § 1983 – Equal Protection**

The plaintiffs claim that the defendants, while acting "under color" of state law, intentionally discriminated against the plaintiffs based on their political viewpoint by requiring the Hudson High School Conservative Club to remove an internet domain name with hyperlinks to beheading videos from ten posters posted on the walls of Hudson High School, in violation of the plaintiffs' constitutional rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

NO. 34

**State Claim – Equal Protection**

The plaintiffs also claim that the defendants violated their equal protection rights under the Massachusetts Constitution, Amendment CVI.  You should apply the same standard of review to the plaintiffs' state equal protection claim as to their federal equal protection claim.

Dickerson v. Attorney General, 396 Mass. 740, 743 (1986);
Commonwealth v. Franklin Fruit Co., 388 Mass. 228, 235 (1983);
Commissioner of Pub. Health v. Bessie M. Burke Memorial Hosp., 366 Mass. 734, 744 n.18 (1975).

NO. 35

**Claims Under 42 U.S.C. § 1983 – Equal Protection**

To establish an equal protection violation under the United States Constitution, the plaintiffs must prove that, "compared with others similarly situated, [they were] selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad intent to injure a person."

Barrington Cove Ltd. Partnership v. R.I. Hous. & Mortgage Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001).

NO. 36

**Claims Under 42 U.S.C. § 1983 – Equal Protection**

The test to determine whether a plaintiff was singled out from other similarly situated individuals for unfair treatment is "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated . . .. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples."

Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989).

NO. 37

**Claims Under 42 U.S.C. § 1983 – Equal Protection**

"Plaintiffs claiming an equal protection violation must first identify and related *specific instances* where persons *situated similarly in all relevant aspects* were treated differently."

Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) (emphasis in original); Cordi-Allen v. Conlon, 494 F.3d 245, 250-51 (1st Cir. 2007).

NO. 38

**Claims Under 42 U.S.C. § 1983 – Equal Protection**

Disparate treatment, however, is not enough to establish an equal protection violation. Plaintiffs must also prove by a preponderance of the credible evidence that defendants acted with discriminatory intent.

The burden is an onerous one: "'Discriminatory purpose' . . . implies that the decisionmaker . . . selected or reaffirmed a course of action at least in part '*because of*' not merely 'in spite of,' its adverse effects upon an identifiable group."

Hayden v. Grayson, 134 F.3d 449, 453 (1st Cir. 1998) (emphasis in original) (citations omitted);
Soto v. Flores, 103 F.3d 1056, 1067 (1st Cir. 1997);
Sampson v. Town of Salisbury, 441 F. Supp. 2d 271, 280 (D. Mass. 2006).

NO. 39

## Claims Under 42 U.S.C. § 1983 – Equal Protection

Even if defendants treated plaintiffs differently because of the content of their speech, and even if defendants acted with a discriminatory intent, plaintiffs cannot recover if you find that defendants nonetheless had a compelling state interest in restricting plaintiffs' speech.

Williams v. Rhodes, 393 U.S. 23, 31 (1968).

NO. 40

**Claims Under 42 U.S.C. § 1983 – Equal Access Act, 20 U.S.C. § 4071**

Plaintiffs allege that the defendants' conduct constitutes a violation of the Equal Access Act, 20 U.S.C. § 4071 (hereinafter "EAA"). In pertinent part, the EAA states:

It shall be unlawful for any public secondary school which receives federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of religious, political, philosophical, or other content of the speech at such meetings.

20 U.S.C. § 4071(a);
Colin v. Orange Unified School Dist., 83 F. Supp. 2d 1135, 1142 (C.D. Cal. 2000).

NO. 41

**Claims Under 42 U.S.C. § 1983 – Equal Access Act, 20 U.S.C. § 4071**

To prevail on their EAA claim, the plaintiffs must prove that the defendants denied the plaintiffs equal access to conduct a Hudson High School Conservative Club meeting, on the basis of the political content of the speech at such meetings.

<u>Colin ex rel. Colin v. Orange Unified School Dist.</u>, 83 F.Supp.2d 1135, 1143 (C.D.Cal. 2000).

NO. 42

**Claims Under 42 U.S.C. § 1983 – Equal Access Act, 20 U.S.C. § 4071**

"Meeting" is defined to include "those activities of student groups which are permitted under a school's limited open forum and are not directly related to the school curriculum." 20 U.S.C. § 4072(3). If you find that the posting of the posters on the walls of Hudson High School did not constitute a "meeting" within the EAA, then you must find against the plaintiffs on their EAA claim.

NO. 43

**Claims Under 42 U.S.C. § 1983 – Equal Access Act, 20 U.S.C. § 4071**

A public school need not grant equal access to a student organization if such access creates a genuine safety concern, interrupts or interferes with the teaching of curriculum, or materially and substantially interferes with the orderly conduct of educational activities within the school. 20 U.S.C. § 4071(c)(4); <u>Caudillo v. Lubbock Ind. School Dist.</u>, 311 F.Supp.2d 550, 568 (N.D. Tex. 2004).  Thus, if you find that the posters of the Hudson High School Conservative Club containing the domain name "hscca.org" could create a genuine safety concern, interrupt or interfere with the teaching of curriculum, or materially and substantially interfere with the orderly conduct of educational activities within the school, the plaintiffs' EAA claim must fail.

NO. 44

**Claims Under 42 U.S.C. § 1983 – Equal Access Act, 20 U.S.C. § 4071**

If defendants' conduct in requiring plaintiffs to remove the "hscca.org" domain name from the Hudson High School Conservative Club posters was done for the purposes of (1) maintaining order and discipline on school premises; (2) protecting the well-bring of students and faculty; or (3) assuring that student attendance at meetings is voluntary, then you must find for the defendants on plaintiffs' EAA claim.

20 U.S.C. § 4071(f).

NO. 45

**Claims Under 42 U.S.C. § 1983 – Qualified Immunity**

School officials who perform discretionary functions, such as Dr. Berman, Mr. Stapelfeld and Mr. Champigny, are immune from liability for money damages in their individual capacities when their conduct does not violate the "clearly established" statutory or constitutional rights of which a reasonable person in the school officials' positions would have known. In other words, if reasonable school officials in the positions of the individual defendants could have believed that requiring the Hudson High School Conservative Club to remove an internet domain name – "www.hscca.org" – with hyperlinks to beheading videos from ten posters posted on the walls of Hudson High School did not violate plaintiffs' constitutional or statutory rights, then the individual defendants are entitled to qualified immunity.

I instruct you that the law with respect to the censorship of the posters because of the potentially offensive nature of the videos and/or the potentially disruptive nature of the videos to school operations was not clearly established at the time of defendants' actions and, therefore, Dr. Berman, Mr. Stapelfeld and Mr. Champigny are personally immune from liability for money damages on any claims that such censorship violated plaintiffs' constitutional or statutory rights.

NO. 46

**Claims Under 42 U.S.C. § 1983 – Qualified Immunity**

Qualified immunity shields government officials performing discretionary functions from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1992);
Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994).

NO. 47

## Claims Under 42 U.S.C. § 1983 – Qualified Immunity

"The relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct."

Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994).

NO. 48

**Claims Under 42 U.S.C. § 1983 – Qualified Immunity**

Qualified immunity "gives ample room for mistake in judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995), quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991) (*per curiam*). "A reasonable although mistaken conclusion about the lawfulness of one's conduct does not subject a government official to personal liability." Id. Qualified immunity anticipates and accommodates "reasonable error . . . because officials should not err always on the side of caution . . ." for fear of being sued. Hunter, 502 U.S. at 229.

NO. 49

**Claims Under 42 U.S.C. § 1983 – Qualified Immunity**

A constitutional right was "clearly established" if it was reasonably well settled at the time of the challenged conduct. <u>Martinez v. Colon</u>, 54 F.3d 980, 988 (1st Cir. 1995). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Suboh v. District Attorney's Office of Suffolk Dist.</u>, 298 F.3d 81, 93 (1st Cir. 2002). "If the operative legal principles are clearly established only at a level of generality so high that officials cannot fairly anticipate the legal consequences of specific actions, then the requisite notice is lacking." <u>Savard v. Rhode Island</u>, 338 F.3d 23, 28 (1st Cir. 2003).

NO. 50

**Claims Under 42 U.S.C. § 1983 – Qualified Immunity**

The burden is on the plaintiffs to prove that the law was "clearly established" at the time the defendants acted.

Davis v. Scherer, 468 U.S. 183, 197 (1984);
Jennings v. Jones, 499 F.3d 2, 24 (1st Cir. 2007);
Horta v. Sullivan, 4. F.3d 2, 13 (1st Cir. 1993).

NO. 51

**Claims Under 42 U.S.C. § 1983 – Qualified Immunity**

If you find that the plaintiffs did not meet their burden of proving that the law with respect to the First Amendment protection of the domain name "hscca.org" was clearly established at the time of defendants' alleged conduct, then you must find Mr. Champigny and Dr. Berman free from liability and damages as to Counts I, III, and V.  If, on the other hand, you find that the plaintiffs' constitutional rights to protection of the domain name were clearly established at the time, you must further decide "whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue."

Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004).

NO. 52

**Claims Under 42 U.S.C. § 1983 – Qualified Immunity**

To determine the understanding of an objectively reasonable official, you must consider the alleged misconduct from the perspective of Mr. Champigny and Dr. Berman. Even if Mr. Champigny and Dr. Berman erred – i.e., if they violated plaintiffs' clearly-established constitutional rights – they are still immune if their mistake as to what the law required was reasonable. Saucier v. Katz, 533 U.S. 194, 205 (2001). If you find that a reasonable school official, similarly-situated to Mr. Champigny and Dr. Berman, would not understand that the challenged conduct violated the plaintiffs' clearly established rights, and would not have acted differently from Mr. Champigny and Dr. Berman, then you must find Mr. Champigny and Dr. Berman free from liability and damages as to Counts I, III, and V.

NO. 53

### State Law Claim – M.G.L. c. 71, § 82

The plaintiffs also allege that the defendants violated their free speech rights under a Massachusetts statute, M.G.L. c. 71, § 82, which protects a student's rights to freedom of expression.  "Freedom of expression" is defined to include, without limitation, "the rights and responsibilities , collectively and individually, (a) to express their views through speech and symbols, (b) to write, publish and disseminate their views, and (c) to assemble peaceably on school property for the purpose of expressing their opinions."

NO. 54

**State Law Claim – M.G.L. c. 71, § 82**

If you find that the alphanumeric sequence "hscca.org" was not protected student "expression," then you must find for the defendants under M.G.L. c. 71, § 82.

NO. 55

**State Law Claim – M.G.L. c. 71, § 82**

The Massachusetts Legislature intended for M.G.L. c. 71, § 82 to codify the holding in Tinker, discussed above, with one major difference. Westfield High School L.I.F.E. Club v. City of Westfield, 249 F.Supp.2d 98, 111 (D. Mass. 2003). While Tinker requires school officials to demonstrate a "*substantial* disruption or *material* interference" in order to restrict student speech, Section 82 permits restriction upon a showing of "*any* disruption or disorder." Id. Thus, if you find that the defendants could reasonably determine that the beheading videos would cause at least some disruption or disorder within HHS, the plaintiffs' claim under M.G.L. c. 71, § 82 must fail.

NO. 56

## State Law Claim – M.G.L. c. 71, § 82

The phrase "any disruption or disorder," as used in M.G.L. c. 71, § 82, includes "prospective disruption or disorder." Thus, "[a] school administrator does not have to wait until disorder or disruption actually ensues; in certain circumstances, a school administrator must be able to prevent disorder or disruption."

<u>Westfield High School L.I.F.E. Club v. City of Westfield</u>, 249 F.Supp.2d 98, 111 (D. Mass. 2003).

NO. 57

**Credibility**

During the course of this trial, you have had the opportunity to hear the testimony of a number of witnesses called by the parties.  In evaluating the testimony of any witness, you may accept or reject, in whole or in part, the testimony presented to you.  In other words, you may accept or reject a witness' testimony in its entirety, or you may pick and choose which portions of the witness' testimony you consider trustworthy.  The credibility of each and every witness is for you the jury to decide.

United States v. Lara, 181 F.3d 183, 204 (1st Cir. 1999);
United States v. O'Brien, 14 F.3d 703, 707 (1st Cir. 1994).

NO. 58

**Damages**

Damages cannot be speculative, and the plaintiffs bears the burden of proof on the issue of damages. Raysor v. Port. Auth. of N.Y. & N.J., 768 F.2d 34, 39 (2nd Cir. 1985).

NO. 59

**Damages**

If you find that the plaintiffs' rights were violated, you can award compensatory damages only if you find actual injury caused by the constitutional deprivations. <u>Carey v. Piphus</u>, 435 U.S. 247, 264 (1978).

NO. 60

**Damages**

Damages based on the abstract "value" or "importance" of constitutional rights are not a permissible element of recovery in Section 1983 cases. <u>Memphis Community School Dist. v. Stachura</u>, 477 U.S. 299 (1986).

NO. 61

**Damages**

Merely because you are given instructions regarding the plaintiffs' damages is not to be construed as an opinion as to whether the plaintiffs should or should not prevail in this case.

NO. 62

## Impartiality

In reaching your verdict, you must not be swayed by bias, prejudice or sympathy.  You may sympathize with the plaintiffs, but you must not permit your sympathy to prevent you from acting fairly and impartially.  It is your sworn duty as jurors to act that way.  Your duty is to consider impartially all the evidence, to apply the law to the facts as you find them to be, and to reach a just verdict regardless of the consequences. E. Debitt & C. Blackman, *Federal Jury Practice and Instructions*, § 71.05.

NO. 63

**Parties**

   As you know, this action was brought by the plaintiffs, private citizens, against the Town of Hudson, its High School, and its public employees.  This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar station in life.  All persons stand equal before the law and are to be dealt with as equals in a court of justice. Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 564 (1st Cir. 1986).

NO. 64

**Evidence**

Statements, objections or arguments made by the lawyers are not evidence in this case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice.

NO. 65

**Evidence**

You do not have to accept all of the evidence as true or accurate. You are the sole judges of the credibility or "believability" of each witness and the weight to be given to his or her testimony.

NO. 66

**Evidence – Impeachment**

A witness may be discredited or impeached by contradictory evidence, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.  If you believe any witness has been impeached or discredited in this way, it is your exclusive responsibility to give the witness' testimony what weight, if any, you may think it deserves.  If a witness is shown to have knowingly testified falsely concerning any material matter, you have a right to distrust that witness' testimony in other particulars. Devitt and Blackmar, *Federal Jury Practice and Instructions* (4th ed. 1987) (modified).

Respectfully submitted,
The Defendants,

JOHN STAPELFELD, in his individual and official capacities as Principal of Hudson High School, DAVID CHAMPIGNY, in his individual and official capacities as Assistant Principal of Hudson High School, Dr. SHELDON BERMAN, in his individual and official capacities as Superintendent of Hudson Public School District, TOWN OF HUDSON, MASSACHUSETTS, and HUDSON HIGH SCHOOL,

By their attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**


/s/ John J. Davis
John J. Davis, Esq., BBO # 115890
Mia B. Friedman, BBO # 663826
Ten Winthrop Square
Boston, MA 02110
(671) 350-0950

Date: February 27, 2008

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on February 27, 2008.


/s/ John J. Davis
John J. Davis, Esq.