UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

DOCKET NO.: 05-11007 PBS

```
_____
                                      )
CHRISTOPHER BOWLER, HUDSON HIGH       )
SCHOOL CONSERVATIVE CLUB, an          )
unincorporated association, JOSEPH T. BOWLER, )
and KIMBERLY A. BOWLER, by and through )
her father and next friend, STEVEN BOWLER, )
      Plaintiffs,                     )
                                      )
vs.                                   )
                                      )
JOHN STAPELFELD, DAVID CHAMPIGNY,     )
DR. SHELDON BERMAN, TOWN OF HUDSON,   )
MASSACHUSETTS and HUDSON HIGH         )
SCHOOL,                               )
      Defendants.                     )
_____)
```

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE*
TO EXCLUDE EXPERT TESTIMONY OF GERALD LEWIS, Ph.D.**

**Introduction**

The defendants, John Stapelfeld, David Champigny, Dr. Sheldon Berman, Town of Hudson, Massachusetts and Hudson High School ("the defendants"), intend to call Gerald W. Lewis, Ph.D., to testify as a witness at trial. Dr. Lewis is a licensed clinical psychologist with extensive experience counseling children. Dr. Lewis will testify that, in his opinion, 12 to 18 year olds are a potentially vulnerable population with respect to viewing the graphic beheading videos that appeared on the www.hscca.org website in December 2004 and January 2005. Indeed, there exists, in his view, "a significant potential for a young person to be negatively affected by viewing the video[s] . . .." Reactions "may take the form of a wide array of psychological symptomatology . . .," including, but not limited to, behavioral, cognitive and

social disruptions.  Among such disruptions may be feelings of anxiety, sleep disorders, difficulties in planning or paying attention, difficulties in processing new information, difficulties in focusing or completing tasks, and impaired comprehension of complex visual-spatial patterns. These disruptions, Dr. Lewis concludes, could affect learning and interfere with the mission of school educational programs.

Defendants timely disclosed Dr. Lewis' Expert Opinion to plaintiffs' counsel, pursuant to Fed. R. Civ. P. 26(a)(2)(B), on December 5, 2007.  Thereafter, plaintiffs had thirty (30) days, or until January 4, 2008, within which to notice and conduct Dr. Lewis' deposition.  The plaintiffs chose not to do so.  Nor did plaintiffs identify any expert witness whom they intend to call at trial.

Plaintiffs now move *in limine* to exclude Dr. Lewis from testifying on defendants' behalf at trial.  Importantly, plaintiffs do not challenge Dr. Lewis' qualifications to testify.  See Plaintiffs' Motion *in Limine* to Exclude Expert Testimony, ¶ 12.  Instead, they contend that (1) Dr. Lewis' testimony is not relevant to any issue in the case; and (2) even if relevant, Dr. Lewis' testimony will confuse the jury.  Therefore, Dr. Lewis, in plaintiffs' view, should be excluded from testifying under Rules 402, 403 and 702 of the Federal Rules of Evidence.  Defendants hereby oppose plaintiffs' Motion *in Limine*.

## **Argument**

Plaintiffs misinterpret the speech issues raised under <u>Tinker v. Des Moines Indep. Community School Dist.</u>, 393 U.S. 503 (1969) and, accordingly, dismiss Dr. Lewis' testimony as irrelevant.  On the contrary, however, Dr. Lewis' testimony is relevant in that it goes to the determination of whether defendants made a reasonable forecast of substantial or material

disruption of school operations before requiring plaintiffs to remove the www.hscca.org website address from their posters. Plaintiffs' Motion *in Limine* should, therefore, be denied.

Plaintiffs challenge Dr. Lewis' testimony on the grounds that it is based on speculation rather than sufficient facts. Specifically, plaintiffs posit that, because there is no evidence that any Hudson High School ("HHS") student watched a beheading video (besides James Melillo) and suffered psychological harm from same, Dr. Lewis' expert opinion is pure speculation, and inadmissible under Fed. R. Evid. 702. Further, plaintiffs allege that such a speculative expert opinion is irrelevant (under Fed. R. Evid. 402) and/or will cause confusion and be a waste of time (under Fed. R. Evid. 403).

Defendants oppose plaintiffs' Motion *in Limine* on the following grounds:

1.  Fed. R. Evid. 702 states that:

    > If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principals and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

    Fed. R. Evid. 702; United States v. Vargas, 471 F.3d 255, 261 (1st Cir. 2006).

2.  Fed. R. Evid. 401 defines "relevant evidence" as:

    > [E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

3.  Expert testimony also must be relevant, "not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or

determine a fact in issue." Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 80 (1st Cir. 1998), citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 591-592 (2003).

4. Fed. R. Evid. 402 prohibits irrelevant evidence, while Fed. R. Evid. 403 prohibits relevant evidence if its probative value is substantially outweighed by, *inter alia*, confusion of the issues or waste of time. Fed R. Evid. 402; Fed. R. Evid. 403.

5. Dr. Lewis properly bases his opinion on his own viewing of the beheading videos, combined with his expertise in the field of clinical psychology (as well as his review of the pleadings and other materials relevant to this litigation).

6. Dr. Lewis will give his expert opinion with respect to the potential for HHS students to experience negative psychological effects as a result of viewing the beheading videos. Specifically, Dr. Lewis will testify that a young person viewing the beheading videos could experience negative psychological effects as a result of viewing the beheading videos, including but not limited to school difficulties, problems with processing novel information, and problems focusing on and completing tasks.

7. Dr. Lewis' opinion is directly relevant to the determination of whether defendants were justified in their instruction to plaintiffs to remove the www.hssca.org website, which contained hyperlinks to the graphic beheading videos, from the posters of the Hudson High School Conservative Club ("the Club").

8. Specifically, one of the main issues to be decided at the trial of this matter is whether the defendants reasonably forecast that displaying the www.hscca.org

    website on posters posted on the walls of HHS was likely to materially disrupt the educational environment at HHS, precipitate substantial disorder or involve an invasion of the rights of other students. See Joint Pre-Trial Memorandum, Subsection 3B, Defendants' Contested Issues of Fact.

9.   If the fact finder determines that the defendants were reasonable in their forecast as to disruption, disorder or invasion of the rights of others, then the defendants cannot be held liable for the alleged violations of plaintiffs' First Amendment right to freedom of speech and expression. See Governor Wentworth Regional School Dist. v. Hendrickson, 421 F.Supp.2d 410, 420 (D. N.H. 2006), quoting Tinker v. Des Moines Ind. Community School Dist., 393 U.S. 503, 513 (1969).

10.   Whether any HHS students actually viewed any of the beheading videos and/or suffered a negative psychological effect from same is immaterial, as defendants' conduct is judged on the reasonableness of their *forecast*[1] of disruption, disorder or invasion of the rights of other students at the time defendants acted. "[S]chool authorities are not required to 'wait until the potential (for disorder) is realized before acting.'" Quarterman v. Byrd, 453 F.2d 54, 58-59 (4th Cir. 1971), quoting LeClair v. O'Neil, 307 F. Supp. 621, 625 (D. Mass. 1969), aff'd, 401 U.S. 984 (1971). In fact, school officials are obligated to take reasonable measures to prevent incidents of disruption or disorder, or interference with other students' rights, before such incidents or interferences occur. Governor Wentworth, 421

---

[1] The noun "forecast" is defined as "a prediction, as of coming events or conditions." American Heritage Dictionary (2d Coll. Ed. 1982).

F.Supp.2d at 420, quoting <u>Tinker</u>, 393 U.S. at 513; <u>Saxe v. State College Area School Dist.</u>, 240 F.3d 200, 212 (3rd Cir. 2001); <u>Boroff v. Van Wert City Bd. of Ed.</u>, 220 F.3d 465, 470 (6th Cir. 2000). See also <u>Chandler v. McMinnville School Dist.</u>, 978 F.2d 524, 529 (9th Cir. 1992); <u>Phillips v. Anderson County School Dist.</u>, 987 F. Supp. 488, 492 (D.S.C. 1997); <u>Jeglin v. San Jacinto Unified School Dist.</u>, 827 F. Supp. 1459, 1461 (C.D. Cal. 1993) ("[T]he Court may consider all circumstances confronting the school administrators which might reasonably portend disruption.")

11. The decision as to whether defendants' forecast of disruption or harm was reasonable remains a central issue in this litigation relevant to plaintiffs' allegations that defendants violated their First Amendment right to free speech and freedom of expression.

12. Other courts have allowed expert testimony into evidence at trial to assist in determining whether defendants' forecast of disruption or harm was reasonable. See, e.g., <u>Gay Student Services v. Texas A & M Univ.</u>, 737 F.2d 1317, 1321, 1330 (5th Cir. 1984) (expert medical testimony admissible regarding effect of homosexual student group on university campus to assist determination of whether school officials were justified in denying official recognition to a homosexual student group); <u>Gay Lib v. Univ. of Missouri</u>, 558 F.2d 848, 854 (8th Cir. 1977) (expert psychiatric testimony admissible regarding effect of homosexual student group on university campus to assist determination of whether school officials were justified in denying official recognition to a

homosexual student group); <u>McIntire v. Bethel School, Indep. School Dist. No. 3</u>, 804 F.Supp. 1415, 1420-1421 (W.D.Ok. 1992) (expert testimony admissible on the susceptibility of youth to alcoholic beverage advertisements to assist determination of whether school officials were reasonable in forecast that the wearing of clothing bearing a message advertising an alcoholic beverage would substantially disrupt or materially interfere with classwork and school discipline).

13. Thus, Dr. Lewis' expert opinion should not be excluded as it is properly based on sufficient facts, and will help the fact finder to determine whether the defendants were entitled to take the actions for which plaintiffs now seek to hold them liable.

14. Finally, while plaintiffs assert that Dr. Lewis' expert opinion will cause confusion and waste time, plaintiffs identify no basis for these conclusory allegations.

WHEREFORE, for the reasons set forth above, the defendants request that this Court enter an order denying the plaintiffs' Motion *in Limine* to Exclude Expert Testimony of Gerald Lewis, Ph.D.

        Respectfully submitted,
        The Defendants,

        JOHN STAPELFELD, in his individual and official capacities as Principal of Hudson High School, DAVID CHAMPIGNY, in his individual and official capacities as Assistant Principal of Hudson High School, Dr. SHELDON BERMAN, in his individual and official capacities as Superintendent of Hudson Public School District, TOWN OF HUDSON, MASSACHUSETTS, and HUDSON HIGH SCHOOL,

        By their attorneys,

        **PIERCE, DAVIS & PERRITANO, LLP**


        /s/ John J. Davis
        John J. Davis, Esq., BBO # 115890
        Mia B. Friedman, BBO # 663826
        Ten Winthrop Square
        Boston, MA 02110
        (671) 350-0950

Date: March 5, 2008


## CERTIFICATE OF SERVICE

     I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on March 5, 2008.


        /s/ John J. Davis
        John J. Davis, Esq.