UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER BOWLER, HUDSON HIGH SCHOOL CONSERVATIVE CLUB, an unincorporated association, JOSEPH T. BOWLER, and KIMBERLY A. BOWLER, by and through her father and next friend, STEVEN BOWLER, <br><br> *Plaintiffs*, <br><br> vs. <br><br> JOHN STAPELFELD, DAVID CHAMPIGNY, DR. SHELDON BERMAN, TOWN OF HUDSON, MASSACHUSETTS and HUDSON HIGH SCHOOL, <br><br> *Defendants*. | DOCKET NO.: 05-11007 PBS |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION IN LIMINE
TO DECIDE VARIOUS ISSUES OF LAW**

The Defendants have moved for rulings by this Court on various issues (Docket No. 78). The following is Plaintiffs' response to those various issues.

**I.   QUALIFIED IMMUNITY**

The Defendants seek additional rulings on the issue of qualified immunity. First, they seek a ruling that Defendant Stapelfeld "in his individual capacity, remains shielded from all of plaintiffs' claims under the doctrine of qualified immunity." (Docket No. 78, p. 3). However, the Defendants' summary judgment motion only sought qualified immunity as to Count I, III and V of the Second Amended Complaint (Docket No. 41, p. 23). Thus, this Court's grant of qualified immunity to

Stapelfeld could extend only to those Counts and not "all" the counts of the Second Amended Complaint.

Defendants Champigny and Berman are assuredly <u>not</u> entitled to a ruling that they are protected by qualified immunity at to Counts I (deprivation of First Amendment rights) and III (violation of the Equal Access Act) of the Second Amended Complaint. This Court's December 18, 2007 ruling specifically found that there was sufficient evidence that Defendants Champigny and Berman acted with intent censor the speech of the Plaintiffs because of the viewpoint of the speech and that it was clearly established that such viewpoint discrimination violates the law (Docket No. 63, p. 7). The Defendants' present motion indicates (Docket No. 78, p. 4) that because the Plaintiffs seek recovery for discrimination under their state and federal equal protection claims (Second Amended Complaint Counts V and VI), this court should "confirm that Mr. Champigny and Dr. Berman remain shielded by qualified immunity with respect to Counts I and III of the plaintiffs' Second Amended Complaint." The present motion also asserts that this would be "consistent with [this Court's] rulings to date." (Docket No. 78, p. 4).

These assertions are either an attempt to confuse the issues or indicate a failure to grasp the substance of those issues. The Plaintiffs' claims for deprivation of their free speech rights clearly include a claim that the censorship practiced by the Defendants constituted viewpoint discrimination. Further, viewpoint discrimination clearly violates the constitutional guarantee to free speech. *Good News Club v. Milford Central Schools*, 533 U.S. 98, 106-07 (2001). Indeed, the whole point of this Court's ruling on the Plaintiffs' motion to reconsider the prior qualified immunity ruling was to find that "the First and Fourteenth Amendment's prohibition of viewpoint discrimination on the basis of political beliefs was clearly established at the time of the individual defendants' alleged conduct."

2

(Docket No. 63, p. 7). It would be patently inconsistent for this Court to now determine that Defendants Champigny and Berman are entitled to qualified immunity on the Plaintiffs' free speech claims. Thus, the motion to confirm that Defendants Champigny and Berman are entitled to qualified immunity on Counts I and III of the Second Amended Complaint must be denied.

## II.   MASSACHUSETTS CONSTITUTIONAL CLAIM

The Defendants also challenge the Plaintiffs' right to proceed under the Sixth Claim of the Second Amended Complaint, which alleges that the Defendants violated the Plaintiffs' right to equal protection of the law as guaranteed by Mass. Const. Amend. CVI. However, Massachusetts' Supreme Judicial Court has written that "our powers of general superintendence require us to fashion an appropriate remedy to the continuing constitutional violation suffered by" a litigant. *Lavallee v. Justices in the Hampden Superior Court*, 442 Mass. 228, 244, 812 N.E.2d 895, 909 (2004). Even more to the point, that Court previously held as follows:

> We have noted, however, that "a person whose constitutional rights have been interfered with may be entitled to judicial relief even in the absence of a statute providing a procedural vehicle for obtaining relief." *Phillips v. Youth Dev. Program, Inc.*, 390 Mass. 652, 657-658 (1983). Certainly a State may not violate a person's constitutional rights and then fairly assert that no redress can be had because the State has not provided a statutory means of enforcing those rights.

*Layne v. Superintendent, Massachusetts Correctional Institution*, 406 Mass. 156, 159-160, 546 N.E.2d 166, 168-69 (1989). *Accord Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 324 (D. Mass. 1997) (a person whose constitutional rights have been interfered with may be entitled to judicial relief directly under the Massachusetts Constitution).

*Layne* held that a plaintiff was entitled to seek relief, including damages, directly under the

Massachusetts Constitution's Declaration of Rights notwithstanding that the plaintiff could not recover under the State Civil Rights Act. Thus, contrary to the request in their motion, the Defendants are not entitled to a ruling that the Plaintiffs are not entitled to recover upon the Sixth Claim in the Second Amended Complaint.

**III.    PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF ARE NOT MOOT**

The Defendants argue that the Plaintiffs' claims for equitable relief are moot because the website address that was listed on the posters the Defendants removed in November 2005 and January 2006, i.e., www.hscca.org, is not presently active. This claim must be rejected for two reasons. First, contrary to the Defendants' assertion, the relief requested by the Plaintiffs is not to be allowed to display "www.hscca.org" on club posters. The Second Amended Complaint request an injunction against the Defendants requiring that they "refrain from preventing the Plaintiffs and other members of the Hudson High School Conservative Club from posting signs or poster, or from showing the website address of the High School Conservative Clubs of America[.]" (Second Amended Complaint, at 15-16). The Defendants do not assert that the High School Conservative Clubs of America has been disbanded or is no longer in existence, and there is nothing to prevent that national organization from either reactivating the website under the www.hscca.org url or from using a new website address. In any case, the Plaintiffs still have an interest in posting any website address of the national organization because information provided by the national organization will be helpful to other students to understand the nature of the Hudson High School Conservative Club and its positions on issues of public interest and importance.

A case is not moot so long as the plaintiff retains a personal stake in the outcome of the case.

Such a stake exists as long as there remains a reasonable possibility that the plaintiff will be subject to the same action by the defendant again. *McLaughlin v. Boston School Comm.*, 952 F. Supp. 33, 35 (D. Mass. 1996). Even if there is not currently a High School Conservative Clubs of America website to publicize, it is more than merely conjectural that there will be such a website. At present, the Plaintiffs are forbidden from publicizing the national organization's website and so are still suffering an injury from the Defendants' actions. The Plaintiffs still have a stake in obtaining injunctive relief to remove the effects of the Defendants' policy and allow the Hudson High School Club to post any website information relating to the national organization. An injunction would still afford the Plaintiffs effectual and valuable relief, *Horizon Bank & Trust Co. v. Commonwealth of Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004), because it affects the Plaintiffs' ability to exercise their ability to exercise their First Amendment rights.

### IV.   THE COURT CANNOT RULE AS A MATTER OF LAW THAT THE HUDSON SCHOOL COMMITTEE IS THE FINAL POLICYMAKER.

The Defendants also ask this Court to rule that the Hudson School Committee is the "final policymaker" for purposes of determining whether there is municipal liability under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). While it points to certain general Massachusetts statutes empowering a school committee to establish policy for a school district, these statutes are not determinative of the issue. As pointed out by one circuit court:

> To determine whether a school district employee is a final policymaker, we look first to state law. [*Jett v. Dallas Ind. Sch. Dist.*,, 491 U.S. 701, 737 (1989)]. A municipal employee may act as a de facto policymaker under § 1983 without explicit authority under state law, but we are ordinarily "not justified in assuming that municipal policymaking authority lies somewhere else than where the applicable law purports to put it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988). Depending on

5

> the circumstances, however, we may also look to the way a local government entity operates in practice. *Jett*, 491 U.S. at 737 (trial judge must identify official policymakers based on "state and local positive law, as well as custom or usage having the force of law") (citation and quotation marks omitted). While "authority to make municipal policy may be granted directly by a legislative enactment," it may also be "delegated by an official who possesses such authority." *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986).

*Lytle v. Carl*, 382 F.3d 978, 982-983 (9th Cir. 2004). In *Lytle*, the court recognized that a school superintendent was the school district's policymaker for purposes of the decision at issue in the case where there was evidence that the superintendent had been granted final decisionmaking authority with respect to that action. Moreover, a superintendent may be the policymaker with respect to a single unconstitutional action. *Id.*

This Court previously recognized that there is evidence indicating superintendent Berman was the responsible policymaker and that he ratified the censorship (Docket # 57, p. 33). While the determination of whether he was actually the final policymaker whose conduct trigger's *Monell* liability may be a question of law, the trial court may still consider evidence of custom and usage in determining who the final policymaker is. *Jett*, 491 U.S. at 737. As indicated by this Court's decision denying summary judgment, there is conflicting evidence in this case concerning where final policymaking authority lies. This Court should not, without further development of the relevant circumstances, decide the policymaker question.

**V.   THIS COURT HAS ALREADY DETERMINED THAT THE FIRST AMENDMENT APPLIES TO THE EXPRESSION AT ISSUE IN THIS CASE.**

The Defendants also ask that this Court rule either that the communication of "www.hscca.org" was not protected expression or that the law on this point was not "clearly

established." However, this Court has already ruled that this constituted expression protected by the First Amendment. *See* Docket # 57, p. 20 ("Because the students had a First Amendment Right to put the website URL on their posters, defendants' motion for summary judgment on Count I is **DENIED**."). To the extent the Defendants desired reconsideration of this ruling, they should have so moved within the time limits of Fed. R. Civ. P. 59(e).

The Defendants' motion also asks this Court to revisit its ruling that Defendants Champigny and Berman are not entitled to qualified immunity as to the Plaintiffs' claim that the censorship of the club posters constituted intentional viewpoint discrimination in violation of the First Amendment (Docket # 63, p.7). Again, they should have raised this by timely seeking reconsideration. Moreover, their point that they are entitled to qualified immunity because it was not "clearly established" that a website address constitutes expression must be rejected. As this Court's prior ruling recognized, the posters sought to communicate information to other students at the school by including the website address. There is evidence supporting the claim that Defendants Champigny and Berman sought to prevent dissemination of that information because of the viewpoint of that information. It is and was clearly established that "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). The Defendants cannot credibly claim that they should not have known that it was unconstitutional to seek to prevent the communication of information because of the viewpoint of the speaker.

## VI. CONCLUSION

For the reasons set forth above,[1] the Plaintiffs respectfully request that the Defendants' motion in limine to determine various issues of law be denied.

Respectfully submitted,

/s/ Gregory A. Hession
Gregory A. Hession
172 Thompson Street
Springfield, MA 01109
(413) 746-3333
BBO No. 564457

Participating Attorney for
The Rutherford Institute

## Certificate of Service

I hereby certify that the foregoing document will be filed through the Electronic Case Filing System, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and that a paper copy shall be served to those persons indicated as non-registered participants, on March 5, 2008.

/s/ Gregory A. Hession
Gregory A. Hession J.D.

---

[1] The Plaintiffs agree with Defendants that Hudson High School is not a separate, suable entity, as set forth in part IV of the Defendants' motion.